### CANNON MFG. CO. v. CUDAHY PACKING CO.

(District Court, W. D. North Carolina. September 8, 1923.)

1. **Corporations ⟜668(10)—Evidence held to show two foreign corporations distinct and separate, so that service on one was not service on the other.**

Evidence *held* to show that two foreign corporations were separate and distinct legal entities, so that service on one doing business in the state was not service on the other as its process agent.

2. **Corporations ⟜668(15)—Foreign corporation to be amenable to process must be "doing business" in such manner as to warrant inference that it is present in state.**

A foreign corporation is "doing business" within a state, making it amenable to process therein, if it does business therein in such a manner as to warrant the inference that it is present there.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

**3. Corporations ☜668(10)—Foreign corporation not a process agent of another because subsidiary of, or owning stock in, the other.**

The fact that a foreign corporation doing business in the state is the subsidiary of another foreign corporation, or that it owns stock in the other, does not make it a process agent for the other.

At Law. Action by the Cannon Manufacturing Company against the Cudahy Packing Company. Petition by defendant appearing specially to set aside service of process and to dismiss the action. Summons quashed, and action dismissed.

Tillett & Guthrie, of Charlotte, N. C., for plaintiff.
John M. Robinson and F. M. Shannonhouse, both of Charlotte, N. C., for defendant.

WEBB, District Judge. On February 2, 1922, Cannon Manufacturing Company, a local corporation doing business at Kannapolis, N. C., brought an action at law in the superior court of Mecklenburg county, N. C., against the Cudahy Packing Company, a corporation organized under the laws of the state of Maine and having its principal place of business in Chicago, Ill., alleging that the defendant had breached a contract made between it and the plaintiff on December 27, 1919, and praying judgment for $49,000, etc.

On February 2, 1922, J. E. Hunter, a deputy sheriff of Mecklenburg county, served a summons and complaint in the action upon one Frank H. Ross, at that time an employee of the Cudahy Packing Company of Alabama, a corporation organized under the laws of the state of Alabama and qualified to do business in North Carolina and in other states; Ross being the process officer of this corporation in North Carolina. The return, which was written by one of the counsel for the plaintiff in this action upon the summons and complaint, is as follows:

"Received Feb. 2, 1922. Executed Feb. 2, 1922, by delivering copy of summons and complaint to Cudahy Packing Company of Alabama, agent of the defendant, Frank H. Ross, to whom papers were delivered, being process officer of the Cudahy Packing Company of Alabama."

The defendant appeared specially on February 18, 1922, and asked for the removal of the case to the District Court of the United States, and accordingly on the 22d of February the cause was ordered removed to the federal court. On April 4, 1922, the defendant appeared specially in the United States District Court and petitioned it to set aside the service of the process in this cause and dismiss the action on the ground that this court has no jurisdiction over the person of the defendant and that it has never been served with process and was not present and doing business in North Carolina.

The transactions out of which the alleged breach of contract in the present case grew had no relation to any activity of the Alabama corporation. The alleged contract was made solely with the packing company, the Maine corporation, and related to the manufacture of cotton sheetings for use in its meat packing business; and the Alabama corporation, as such, is in no way concerned with the merits of the controversy.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The counsel for both plaintiff and defendant agreed that the issue to be passed upon by the court is solely whether there is such an identity between the Alabama corporation and the Maine corporation as that the Maine corporation was present and doing business in North Carolina, because the Alabama corporation was present and doing business there, and whether, therefore, service upon the process agent of the Alabama corporation is equivalent to service made upon the Maine corporation, and is effective to bring the latter within the jurisdiction of this court.

The plaintiff contends that the two corporations are identical, that the Maine corporation itself carries on business in North Carolina through the agency of the Alabama corporation, and in such case the law would regard service upon the Alabama corporation as service upon the Maine corporation.

[1] The defendant denies that service of process in North Carolina upon the process agent of the Alabama corporation is sufficient to give this court jurisdiction over the Maine corporation; and the defendant further denies the identity of the two corporations, and asserts that the Alabama corporation has at all times since its creation maintained its separate existence and business, and denies that any relation of agency exists between the two corporations; and therefore the defendant contends that the law will not regard service of process upon one distinct legal corporate entity as giving jurisdiction over another distinct legal corporate entity.

[2] The court realizes that what constitutes such a doing of business by a foreign corporation as will make such corporation amenable to process in this state is a question which depends upon the facts. Quoting the language of the court in Bank of America v. Whitney Central National Bank, 43 Sup. Ct. 311, 67 L. Ed. ——:

"The sole question for decision is whether, at the time of the service of the process, defendant was doing business within the district in such manner as to warrant the inference that it was present there."

The court therefore sets forth briefly the substantial facts in this case as gathered from the depositions of Messrs. Frank H. Ross and John G. Gearen. The salient facts testified to by Mr. Ross are as follows:

At the time process was served on him, he was general agent of the Cudahy Packing Company of Alabama in charge of the office in the city of Charlotte. He had been with the Cudahy Packing Company of Alabama for something like 12 years. This company bought and sold various sorts of meats, lards, compounds, and all packing products, and did a local retail business. This office collected for goods that it sold to the jobbers, and all the money collected from such sales was deposited in the bank or banks at Charlotte to the credit of the Cudahy Packing Company of Alabama.

The Chicago office of the Cudahy Packing Company of Alabama furnished the Charlotte office price quotations or cost sheets. Sometimes this company would buy from outside concerns, and not exclusively from the Cudahy Packing Company of Maine—particularly if the Cudahy Packing Company of Maine was short. Some time in the spring

of 1922 the Cudahy Packing Company of Alabama closed its Charlotte office and deposited all the moneys thereof in the banks to the credit of the Cudahy Packing Company of Alabama, and the Cudahy Packing Company of Alabama officials at Chicago drew this money from the banks. The Cudahy Packing Company officials furnished selling quotations or prices for the goods. The Charlotte office of the Cudahy Packing Company of Alabama had no transactions with the Cudahy Packing Company of Maine. It always bought its goods through the Chicago office of the Cudahy Packing Company of Alabama. It never received any invoice from any company or corporation except the Cudahy Packing Company of Alabama. The Chicago office did all the buying for the Charlotte office. The Charlotte office never knew the Cudahy Packing Company of Maine in any of its transactions. Prior to May 1, 1922, Mr. Ross had a salary contract with the Cudahy Packing Company of Alabama, which was in writing, and during the time he was so employed he never received any salary from the Cudahy Packing Company of Maine.

The salient facts testified to by Mr. Gearen are as follows:

He stated that he was assistant manager of the Cudahy Packing Company of Maine and had immediate charge of the physical work in the general office in Chicago.

The parent company is the Cudahy Packing Company, organized under the laws of Maine. There are also other Cudahy Packing Companies, such as the Cudahy Packing Company of Nebraska, the Cudahy Packing Company of Louisiana, etc. The Cudahy Packing Company of Maine, the parent company, owns all of the other subcorporations, and in many instances the officers and directors are the same, but do not hold the same office in these subcorporations. Mr. E. A. Cudahy, Sr., is president of the Maine corporation, and is also president and treasurer of the Alabama corporation. Mr. E. A. Cudahy, Jr., is vice president of the Maine corporation and is also vice president of the Alabama corporation. These are the only two common officers. Mr. Gearen is also assistant treasurer of the Alabama corporation, which is the same position he holds with the Maine corporation. The Alabama corporation transacts business in Alabama, Kentucky, North Carolina, South Carolina, and Virginia. The relationship between the Maine company and the Alabama company with respect to the sale of goods and merchandise is in the same respect as that of creditor and debtor.

The Alabama corporation makes reports to the general office. There are different kinds of reports, monthly for the most part. Each one of the branch houses of the Alabama corporation sends its reports to the general office in Chicago. The Alabama corporation as such does not make reports to the general office. The headquarters of the Alabama company are 111 West Monroe street, Chicago, which is the same address as that of the Maine corporation. Various kinds of reports are sent from the Charlotte office of the Alabama corporation to the general offices in Chicago, such as reports of invoices covering goods received and taken into stock during certain periods, stock reports, a record of the receipts of stock, including previous inventory, details

of sales, as to weight and amounts; also closing inventory as to weight, price, and amount, and also loss or gain in the products sold during the period; also statements of expenses, including detailed records of the items of expense with vouchers and receipts, a statement of freight, a complete record of freight paid on outbound shipments, a statement of earnings and expenses—all of which constitute a complete résumé of the financial results of the branch for the period.

There is also received at the general offices of the Alabama corporation at Chicago a statement of the deposit and draft account, which is a complete record of all daily deposits made in the banks at Charlotte by the local branches of the Alabama corporation. There is also a record of the drafts which the Charlotte office draws on the Alabama corporation at 111 West Monroe street, Chicago, covering payments they make for purchases and expenses, salaries and local expense items. These reports come to the Chicago offices addressed simply "Cudahy, 111 West Monroe street, Chicago, Ill." This block of incoming mail is handled by the mail clerk of each particular department and delivered to the accounting department, which has three divisions: Consignment, branch house auditing, and accounting.

The Maine corporation itself sells goods in Philadelphia, and reports from the Philadelphia branch office are addressed to the general office of the Maine corporation in Chicago in the same way and are handled by pretty much the same persons as handle the reports from the Charlotte office; these employees being employees of the Maine corporation.

The Maine corporation keeps an account with each subsidiary company, including the subsidiary company the Alabama corporation, but does not keep an account with each individual branch of the Alabama corporation. In other words, the Maine corporation keeps books with the Alabama corporation, but does not keep books with the individual branch houses. The total items shipped by the Maine corporation to the various branch houses of the Alabama corporation, or rather to the Alabama corporation offices, is charged in the journal or ledger of the Alabama corporation, and each item making up the total amount can be traced in the various books. There is kept by the Maine corporation what is termed the "Cudahy Packing Company of Alabama Ledger," the Maine corporation keeping no individual account on its books with the several branch houses; but it has one account termed the "Cudahy Packing Company of Alabama," into which at the end of each period entries are made showing totals of all items that go through that journal, containing both debit and credit items. These books absolutely check up and balance. The Maine corporation charges these total amounts to the Alabama corporation, and at the end of certain periods, for instance on April 1, 1922, there was a credit of $209,000 given to the Alabama corporation, which credit was secured in the following manner: Deposits are made daily by the various branches of the Alabama corporation, and duplicate deposit slips showing the amounts deposited are mailed direct to the general office by the banks. Then the Cudahy Packing Company of Alabama, through one of its officers in Chicago, draws a draft payable to itself or "ourselves," and

indorses it, for the amount deposited, and that draft afterwards is indorsed, "Pay to the order of the Cudahy Packing Company" (Maine corporation), and signed, "The Cudahy Packing Company of Alabama;" and when such a draft is drawn it is put on deposit to the credit of the Maine corporation. The Charlotte banks kept their statements of account with the Cudahy Packing Company of Alabama, 111 West Monroe street, Chicago, Ill.

The officers of the various corporations with headquarters at 111 West Monroe street, Chicago, are paid by the various corporations pro rata according to the work done for each, and a regular charge is made monthly by the Maine corporation against the Alabama corporation for services performed in connection with the handling of the details of the office of the Alabama corporation by the employees of the Maine corporation. In other words, the charges cover services of the mailing department, the accounting department, the bookkeeping department, the collection department, the cashier's department, the legal department, or any one else in the office who is an employee of the Maine corporation. The Alabama corporation keeps no bank account in the city of Chicago. The paid-in capital stock of the Maine corporation is $25,800,000, and the capital stock of the Alabama corporation is $100,000. The Alabama corporation has no surplus.

A return was made on the 19th of July, 1921, by L. H. Goss, assistant treasurer of the Alabama corporation, to the taxing authorities of the state of North Carolina, which was made in the name of the Cudahy Packing Company of Alabama, showing that this company was organized under the laws of the state of Alabama with its principal office at Montgomery, Ala., with E. A. Cudahy, president, Chicago; Thomas D. Body, secretary, Atlanta, Ga., and E. A. Cudahy, treasurer, Chicago, Ill.; and the board of directors were E. A. Cudahy, E. A. Cudahy, Jr., Chicago, Fred S. Ball, Montgomery, Ala., Thomas Creigh, Chicago, and Thomas D. Body, Atlanta. This report also showed that the Cudahy Packing Company of Alabama did business in the states of Alabama, Florida, Kentucky, North Carolina, South Carolina, Virginia, and Tennessee. Frank H. Ross, care the Cudahy Packing Company of Alabama, Charlotte, N. C., was the officer or agent in charge of its business in the state of North Carolina, and upon whom process against the corporation may be served. The return also showed that the value of the property owned and used by the Alabama corporation in North Carolina was in round numbers $49,000; this property being situated at Charlotte and Wilmington. It also showed that the value of the property owned and used by the company outside of North Carolina was, in round numbers, $557,000; and that the volume of business done in North Carolina during 1921 was, in round numbers, $412,000. The last Saturday in December is the date of the annual election of officers. This statement was filed and sworn to by L. H. Goss, assistant treasurer of the Alabama corporation.

The manager of the Charlotte office operates under instructions of the general office of the Alabama corporation, 111 West Monroe street, Chicago.

The Alabama company has fiscal periods covering four weeks, or five in some cases, at the end of which time it closes its books at each

branch and prepares and forwards to the general office certain statements, so that it may be seen what property and money the Alabama company has, and the same as to other subsidiary companies. It is simply bookkeeping, and not a real closing period, as between the companies. This statement always shows what the Alabama company owes the Maine company. "Under our system of bookkeeping it never shows that the Maine company owes the Alabama company anything." In other words, the subsidiary companies always owe the parent corporation. "I cannot remember when the Alabama corporation declared a dividend, but I understand it did declare a dividend at one time, but it has not done so for a number of years." Auditors for the Maine company are sent out to audit the books of the branches of the Alabama company, which work is paid for by, or charged to, the Alabama corporation.

The Maine corporation was incorporated in October, 1915. The assistant treasurers of the Maine and Alabama corporations are appointed by the boards of directors of their respective corporations and are not elected by the stockholders. L. H. Goss was appointed assistant treasurer of the Maine corporation by the board of directors, and he is also assistant treasurer of the Alabama corporation, and was appointed by the board of directors of the Alabama corporation. The directors of the Maine corporation are E. A. Cudahy, E. A. Cudahy, Jr., J. M. Cudahy, G. C. Shapard, George Marples, and F. E. Wilhelm; and the directors of the Alabama company are E. A. Cudahy, E. A. Cudahy, Jr., T. D. Body, F. S. Ball, and Thomas Creigh.

Under the system of bookkeeping maintained, it is absolutely possible to trace every item which is shipped by the Maine corporation upon the order of the Alabama corporation through vouchers and show that the Alabama corporation was charged with each one of these items, and there are no shipments made on account of the Alabama corporation which are not charged to it. The Alabama corporation has no interest in or control over the packing plant at Sioux City, Iowa, from which it receives its meat products. The accounts with the Alabama corporation in every detail are kept separate and distinct from those of the Maine corporation. The money with which the Alabama corporation operates is advanced or loaned to it by the Maine corporation. There is no prohibition against the Alabama company buying its products from packers other than the Maine corporation. The Alabama corporation in the past has dealt in other things than packing house products, such as rice, poultry, butter, eggs, cheese, and oleomargarine. The Alabama corporation is not only charged with services actually rendered or stamps furnished, but is also charged by the Maine corporation regularly every period for interest and balances owing to the Maine corporation. The Alabama corporation paid the salary of Mr. Ross, its local manager at Charlotte. The Cudahy Packing Company of Alabama was organized December 31, 1898, and was not organized by or at the instance of the Maine corporation, which was not formed until 1915. The Cudahy Packing Company of Alabama has its own officers or board of directors, owns its own property, owns

its own accounts, collects its own bills, and sues in its own name and is sued in its own name.

It will be seen, therefore, from the forgoing facts, that the Alabama corporation is a separate and distinct legal entity with its board of directors and officers, with a principal office at Montgomery, Ala., and with its general office in Chicago; that it buys practically all of its meat products from the Maine corporation and that all of its purchases are charged to it upon the books of the Maine corporation, and that each item sold by any of the branch offices of the Alabama corporation can be traced all through the books of the Alabama corporation up to the grand total on the books of the Maine corporation; that the officers of the Alabama corporation are appointed by its five directors, two of whom are directors of the Maine corporation; that the Maine corporation owns all of the stock of the Alabama corporation; that it furnishes the Alabama corporation any necessary moneys; that the Alabama corporation has not in recent years declared any dividend; that all moneys collected by the local agent of the Alabama corporation are deposited in the local banks to the credit of the Alabama corporation and later drawn out of the local banks by a draft signed by the treasurer of the Alabama corporation and made payable to the Maine corporation; that the Alabama corporation not only sells products of the Maine corporation, but also other products not produced by or bought from the Maine corporation; that there is nothing in the by-laws of the Alabama corporation, and no other provision written or implied, forbidding the Alabama corporation from buying meats and meat products from whomsoever it desires.

If the issue I am passing upon were a question of preventing fraud through a corporate fiction or of preventing an escape from just liability, the court would have little trouble in holding that there is such identity between the two corporations as to enable the court to prevent fraud; but while the courts generally have held that they will look through corporate fictions to prevent such fraud or to enforce just liability, yet I know of no case where it has been found that a separate legal corporate entity can have process served upon it and such process take the place of process on some other separate legal corporate entity.

[3] The fact that the Alabama corporation is a subsidiary of the Maine corporation does not make the Alabama corporation a process agent of the Maine corporation. Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710.

Stock ownership by one corporation in another does not make the other a process agent. People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537.

The court heard with interest the argument of counsel upon both sides of this controversy, and has read carefully their able briefs, and has read diligently all of the testimony in the nature of depositions, and is impelled to the conclusion, by the letter and spirit of the decision in Peterson v. Chicago, Rock Island & Pacific Railway Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841, that the Alabama corporation must be regarded as a separate legal entity for the purpose of legal proceed-

ings, for "it was that corporation alone which transacted any business in this state, notwithstanding it may have been for all practical purposes merely the instrument of the defendant corporation." This Peterson Case is more nearly "on all fours" with the case under consideration than any the court has been able to find, and the facts in that case seem to be stronger in the direction of the identity or sameness of the two corporations, and the agency of the Gulf Company, than the facts in this case tend to the identity of the two corporations or the agency of the Alabama corporation.

Quoting from defendant's reply brief, I include the following as the facts in the Peterson Case:

(1) The Pacific Company owned all the stock of the Gulf Company.

(2) The boards of directors and the executive committees of the two corporations were controlled by the same men.

(3) The president of the Gulf Company was also the president of the Pacific Company, and reports were made by officials of both companies to this officer.

(4) The two companies had far more employees in common than in the case at bar, each paying a percentage of their salaries.

(5) The transfer of the properties to the Gulf Company from its predecessors was "for the purpose of consolidating these roads and getting them under one management, the management of the system."

(6) The Gulf Company paid no dividends.

(7) The road of the Gulf Company was built with money advanced by the Pacific Company.

(8) The Gulf Company had no passenger equipment, but leased it from the Pacific Company.

And yet, notwithstanding this array of facts pointing to the identity of the Gulf and the Pacific Companies, the Supreme Court held that the Gulf Company was a separate corporation for the purpose of having process served upon it, and that process served upon it was not process served upon the Pacific or nonresident company.

It is the order of the court, therefore, that the service of summons in this cause upon Frank H. Ross be, and the same is hereby, quashed and set aside. In making this order the court is taking no rights from the plaintiff. It has its controversy with the Cudahy Packing Company of Maine, and that is the corporation the plaintiff is endeavoring to sue. The courts under the laws and the Constitution are open to the plaintiff to bring its action against this defendant in the proper forum. The plaintiff evidently realizes that the Alabama corporation is not responsible for the tort or damage of the Maine corporation, otherwise the plaintiff would have brought suit in the first instance against the Alabama corporation, which was doing business in North Carolina.

The summons is quashed, and the action dismissed.