**UNITED STATES of America,**
**Plaintiff,**

v.

**BUFFALO WEAVING AND BELTING COMPANY, a New York corporation, The Merriam Company, an Ohio corporation, and John W. Merriam, Charles L. Kahn, Eugene Greenhut and William S. Merriam, individually and as officers and directors of Buffalo Weaving and Belting Company and as officers and directors of The Merriam Co. and as officers and directors of The Galanot Products Company, an Ohio corporation, Defendants.**

United States District Court
S. D. New York.
May 24, 1956.

Paul W. Williams, U. S. Atty., for the S. D. of New York, New York City, for the United States. Milton E. Lacina, New York City, of counsel.

Charles L. Kahn, New York City, for defendant, Merriam Co.

Harold M. Goldblatt, New York City, for defendant Eugene Greenhut.

PALMIERI, District Judge.

This is an action by the United States to recover the sum of $1,181,422.30. The United States is pledgee and beneficiary under certain agreements concerning a judgment debt which arose under the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191. Two motions are before the Court, one to quash service of process on one of the corporate defendants and the second to modify a temporary injunction issued in this Court.

The judgment debtor, The Galanot Products Company (Galanot), is an Ohio corporation now insolvent. The United States has joined The Merriam Company (Merriam), an Ohio parent corporation of Galanot, and the Buffalo Weaving and Belting Company (Buffalo), a New York subsidiary of Merriam, as parties to this action. Merriam, allegedly indebted to Galanot for large sums of money, was a party with Buffalo to a "Standby Agreement" with the Department of Justice under which the Department agreed to refrain from court action on the Galanot

debt. The Department took a note from Merriam and a pledge of Buffalo's stock as security for Buffalo's agreement to pay the debt by installment. Buffalo also agreed to limit the compensation of its directors, the individual defendants in this action, who are also the officers and directors of Merriam and Galanot.

The complaint alleges, *inter alia*, that the renegotiation debt is still unpaid, the "Standby Agreement" in default, and the security, owing to mismanagement and payments violative of the agreement, impaired. Defendants deny these contentions. They claim that the note and collateral were released when the agreement expired by its own terms and was replaced with a number of subsequent agreements fully complied with. The plaintiff sues for judgment on the Merriam note, appointment of a receiver for Buffalo, removal of Buffalo's officers, an injunction against salary payments to the individual defendants, and an accounting.

The first of the two motions before the Court is brought by The Merriam Company to quash service of process and dismiss the action against it on the ground that it is not subject to service or suit in this jurisdiction. See Rule 4(d) (3) F.R.Civ.P., 28 U.S.C.; 28 U.S. C. § 1391(c). Merriam alleges that it is not licensed to do business in New York, has no New York office or phone listing, keeps no books nor records here and engages in no business activities in the City or State of New York.

Service on Merriam was made on its president, Eugene Greenhut, in his customary headquarters at the New York City office of Buffalo. Merriam owns all of Buffalo's stock as well as that of Galanot. All four of Merriam's officers and directors, and only they, are the officers and directors of both Buffalo and Galanot.[1] Two of them are the sole owners of Merriam. Galanot does no active business, and Merriam's only functions in connection with that subsidiary appear to

be the exercise of control over its remaining assets and the assumption of responsibility for its debts. Buffalo, on the other hand, is a going, income-producing business engaged in both manufacture and sales.

Other than its function as conduit for the receipt of income from Buffalo, Merriam's sole purpose, even in retaining control of Galanot's assets, appears to be fulfilled in assuring the continued operation of Buffalo. It may be noted that the arrangement in issue here, though directed at liquidation of a Galanot debt, grew out of and was necessitated by the financial exigencies of Buffalo.

▇▇▇▇ It is established by decision of this Circuit as well as of the Supreme Court that the mere domination, through stock ownership and interlocking directorates, of a corporate subsidiary, does not of itself bring the parent within the jurisdiction where the subsidiary does business. Cannon Mfg. Co. v. Cudahy Packing Co., 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 1949, 175 F.2d 900. These decisions, however, concerned corporations actually engaged in business in jurisdictions other than the place of suit. They stated the principle that a corporation extending its operations to another jurisdiction may employ a subsidiary rather than an independent agency without thereby entering the foreign jurisdiction. They did not purport to hold that responsibility for the commercial transactions of a business actually run as a single entity could be fragmentized solely as a means of obtaining immunity from essentially collective liability. On the contrary, both opinions are at pains to distinguish between corporate separation manifested by business arrangements, though formal and circumscribed, and a separation which is purely fictitious. This case falls within the latter category. All of the corporate entities have become parties to agreements in which each, to secure the

---

**1.** Defendant Greenhut is the one exception. Recently ousted by vote of the Board as Chairman of Buffalo's Board of Direc-
tors, he has no other officership in that corporation.

continuance of Buffalo as a going business, has become responsible for the debt of one of them. They have so intertwined their obligations as to make impracticable the resolution of the controversy in a suit against any of them individually. They now seek to block a single action which could fix the liability for a debt concededly owing to the Government. Yet all the evidence suggests that for a number of years, the sole concern of their officer-director owners, acting indiscriminately through Merriam, Buffalo or Galanot, has been to carry on the business of Buffalo in New York. Three corporations, maintained on paper, disperse the financial responsibility without any functional division either of the financial or of the commercial aspects of the business. Under these circumstances, Merriam may be found to be doing business in New York, and service on its president in the Buffalo office may be sustained, without any violation either of the general rules of corporate presence or the requirements of due process of law. The motion to quash service of process and dismiss the complaint against Merriam must be denied.

The second motion before the Court is brought by defendant Eugene Greenhut to modify portions of an injunction issued against the defendants in this Court on January 25, 1956. The injunction, among other things, stays Greenhut from proceeding with prosecution of the first cause of action in a suit brought against Buffalo in the New York State Court. The claim is for $424,841.-53 alleged to be due under an account stated pursuant to a bonus arrangement with Buffalo. Greenhut moves for an order permitting him to proceed with this cause of action.

Defendant Greenhut has shown no change of circumstances since the issuance of the injunction which would justify modification of the order of this Court. Cf. Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., 1941, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836; Coca-Cola Co. v. Standard Bottling Co., 10 Cir., 1943,

138 F.2d 788. The stay was issued to protect the interest of the United States, as the conceded creditor of some or all of these defendants, in ultimately collecting its debt. Should it be dissolved, this interest would be seriously jeopardized. A recovery by Greenhut in a state court judgment would only begin the process of immunizing Buffalo's assets from subjection to the Government's claim; the mere permission for him to proceed would be a signal for the other directors and officers of Buffalo, who have asserted similar rights against that company, to institute similar actions. It is at least questionable, in view of the complete control of Buffalo by these potential claimants, whether Buffalo would seriously defend against Greenhut's claim. Moreover, the very accrual of these claims is alleged to violate the "Standby Agreement," and raises a substantial question as to the good faith of these defendants in carrying out their obligations to the Government. Thus, the state court would be required to adjudicate issues affecting a substantial obligation owing to the United States and which this Court ultimately must pass upon. Under the circumstances, all of the parties and all of the issues should be the object of one adjudication on the merits and the status quo should be maintained abiding the event. Cf. United States v. Leiter Minerals, Inc., D.C.E.D.La.1954, 127 F.Supp. 439, affirmed, 5 Cir., 1955, 224 F.2d 381, certiorari granted, 1956, 350 U.S. 964, 76 S.Ct. 439, 100 L.Ed. 837; United States v. Taylor's Oak Ridge Corp., D.C.E.D.Tenn.1950, 89 F. Supp. 28; United States v. Cain, D.C. W.D.Mich.1947, 72 F.Supp. 897.

Mr. Greenhut claims that he is unfairly prejudiced by the stay because the Government has failed to obtain jurisdiction over the parties to this action and is unable to prosecute its claims. In view of the decision on the Merriam Company's motion to dismiss, however, it does not appear that any indispensable party is now unavailable in this jurisdiction. Under the circumstances, there appears no valid reason for revoking the stay.

Defendant Greenhut seeks to modify the injunction in another respect. He urges the Court to enjoin Buffalo from paying any salaries to any of the individual defendants for any period after February 28, 1956.

█ The injunction as it now stands prevents Buffalo from expending any sums of money except in the regular course of its business. Regular salary payments to the directors are confined within reasonable bounds by reference to the limitations in the agreement between Buffalo and the Department of Justice. Greenhut's purpose, apparently, in seeking to impose additional limitations, is to assure the availability of funds for satisfaction of any judgment he might eventually procure in the state court. He has shown, however, no facts which would warrant the Court in granting protection so extraordinary as to prevent the payment of reasonable salaries for services actually being rendered.

The motions both to quash service of process and dismiss the action against the Merriam Company, and to modify the temporary injunction, are denied.