[L. A. No. 26458. In Bank. Nov. 16, 1961.]

EMPIRE STEEL CORPORATION OF TEXAS, INC., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ASSOCIATED METALS AND MINERALS CORPORATION, Real Party in Interest.

824

Frank De Marco, Jr., for Petitioner.

No appearance for Respondent.

Greenberg, Shafton & Schlei and Norbert A. Schlei for Real Party in Interest.

WHITE, J.—This is a petition for writ of prohibition by Empire Steel Corporation of Texas, Inc. (hereinafter referred to as Empire), wherein it seeks to prevent respondent superior court from proceeding in an action brought against it by Associated Metals and Minerals Corporation (hereinafter referred to as Associated), the real party in interest herein. Empire moved to quash the instant service of summons on the ground that it was not subject to the jurisdiction of respondent court, but its motion was denied by that court. The present writ also is sought on jurisdictional grounds. Petitioner is organized and exists under the laws of Texas, and has not formally qualified to do business in California.

In the pending action, Associated seeks to recover $25,000 alleged damages for breach of a contract by Gachman Steel Corporation of California (hereinafter referred to as Gachman), a wholly owned and controlled subsidiary of Empire, in that Gachman failed to take delivery of quantities of steel purchased from Associated. As plaintiff, Associated also seeks to recover its damages from Empire, on the grounds that Gachman operated in California as the *alter ego* of Empire, and that Empire's conduct with respect to Gachman was fraudulent as to those firms doing business with Gachman. The Gachman corporation is in bankruptcy. The instant service of process upon Empire in the basic action was effected when a copy of the summons and complaint was delivered to Dan J. Gachman, a resident of Los Angeles, who is currently vice-president of Empire and president of Gachman. (Corp. Code, § 6500.) An alternative writ of prohibition issued.[1]

Empire is engaged in brokering, warehousing, and selling steel products. While most of its business activity is confined to Texas, it made occasional sales in California in the period between 1945 and 1957. In 1957, Empire desired to carry on a more extensive business in California, but was advised by local financing institutions that it would be necessary to have

[1] Section 416.3 of the Code of Civil Procedure provides: "If a motion of a defendant . . . to quash service of summons, as provided in Section 416.1 of this code, is denied by the court, he may, before pleading, . . . petition an appropriate appellate court for a writ of mandate directed to the court wherein the action or proceeding is pending requiring the entry of its order quashing the service of summons." Petitioner, however, proceeded pursuant to sections 1102 and 1103 of the Code of Civil Procedure, in its instant attempt to compel respondent superior court to desist from any further proceedings against it in the basic action brought by Associated. (See *Owens* v. *Superior Court*, 52 Cal.2d 822, 827 [345 P.2d 921].)

a corporation whose assets and books were kept in California before local credit could be extended.

The Gachman corporation was organized in California in June 1957, as a wholly owned subsidiary of Empire. Dan Gachman, who according to verified averments by the real party in interest owns 47.5 per cent of the outstanding stock of Empire, moved to Los Angeles and assumed the management of Gachman, Inc. The real party in interest also avers that Dan Gachman was Empire's president until sometime between September 1959 and November 1960 (allegedly based upon Dun & Bradstreet reports). It further appears according to the real party in interest that one Leon Gachman also owns 47.5 per cent of Empire's stock, and that the remaining 5 per cent is owned by Jacob Gachman. Apparently Dan, Leon, and Jacob Gachman make up the boards of directors and executive personnel for both Empire and Gachman.

Gachman was established with inventory, office furniture, and fixtures furnished largely by Empire, and Gachman leased its vehicles from the same corporation which leased vehicles to Empire. The leasing corporation is also owned by the Gachman family. Empire made an initial transfer of steel inventory valued at approximately $242,000, and thereafter at least another $23,000 worth of Empire's inventory was transferred to Gachman, Inc. Apparently Empire's customers in California continued to make inquiries of Empire, but they were referred to Gachman, Inc. Dan Gachman testified that in the three years of Gachman's operations there were very many such referrals. Also, Empire made some direct shipments to points outside of California for customers of Gachman, Inc.

In return for the value of the initial inventory and equipment in excess of the value of its capital stock, Gachman, Inc. gave to Empire its note for approximately $92,000, payable 18 months from June 1957 at 5½ per cent interest. Concerning the $92,000 indebtedness, Dan Gachman testified: "That was supposed to have been paid up pretty quick, but . . . we paid them $75,000 and never got caught up. Q: When did you stop making payments on schedule to Empire Steel Corporation? A: I never made an exact schedule of payments with them." The balance of $17,000 was never paid, and the note was not renegotiated between the two corporations. Dan Gachman testified that in the two years prior to February 1961, "about the only way" that Empire received any pay-

ments from Gachman, Inc. was through offsets for "tires . . . or various and sundry things." But as of November 1960, Gachman owed Empire approximately $40,000. When asked, "How did it get back up to $40,000?", Dan Gachman testified: "I think we bought some material from time to time. I rode them [Empire] and in preference paid someone else. I used them more than I used any other creditor, let's put it that way." Dan Gachman also testified that in the later years of the operations of Gachman, many creditors "were screaming for their money." He further stated: "I was juggling the best I could with the amount of money I had to stay in business."

The instant contract with Associated was made in California in February 1960, a time when it was fairly well known that Gachman was financially unstable, and the contract contains measures designed to preserve a security interest for Associated in the goods to be sold. But the real party in interest states that the latter contract merely "superseded and replaced a number of written contracts relating to the same steel materials entered into during a period of approximately one year prior to February [1960]," at times when Associated did rely on the then good credit of Gachman, Inc.

It was stated on behalf of Associated in its declaration in the trial court in opposition to Empire's motion to quash service of process that: "The testimony of Mr. Gachman indicates that Empire used Gachman Steel as its *alter ego*; that Gachman Steel has long been insolvent if its obligations to Empire and other companies owned by the Gachmans were treated as bona fide debts; that Empire withheld action on its purported debts owed by Gachman Steel so that the latter company could go on in business and incur debts to third parties like plaintiff." The real party in interest has also alleged that Empire's shipments to Gachman were disguised contributions to capital made in the form of sales so that Empire could claim creditor status in the event of bankruptcy by Gachman. Empire is presently asserting a creditor's claim against the bankrupt Gachman corporation for approximately $40,000.

Whether service of process upon petitioner's vice-president Dan J. Gachman, pursuant to section 6500 of the Corporations Code, was valid depends herein upon whether Empire was "doing business in this State," within the meaning of Code of Civil Procedure, section 411, subdivision 2. (*Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77, 82 [346 P.2d 409]; *West Publishing Co.* v. *Superior Court,* 20 Cal.2d 720, 726

[128 P.2d 777].) ■ In California, the aforesaid term, "doing business," "is synonymous with the power of the state to subject foreign corporations to local process." (*Cosper* v. *Smith & Wesson Arms Co., supra,* 53 Cal.2d 77, 82.) ■ Thus, whether or not a foreign corporation is doing business within this state and is subject to the jurisdiction of our courts depends upon the limits for such jurisdiction as determined by our statutory and constitutional provisions, which in turn are subject to applicable federal constitutional guarantees, especially the due process guarantee of the Fourteenth Amendment. (*Jeter* v. *Austin Trailer Equipment Co.,* 122 Cal.App.2d 376, 381 [265 P.2d 130].) The problem of jurisdiction over a foreign corporation is therefore a combined state and federal question. (*Harris* v. *Deere & Co.,* 128 F.Supp. 799, 801-802.) ■ Specifically, we have held that the term "doing business" is a descriptive one that the courts have equated with such minimum contacts with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855, 858 [323 P.2d 437].)

Petitioner argues that Empire itself has not had the requisite "minimum contacts" within this state, since all business affairs in California have been carried on through its subsidiary, Gachman, Inc. Principal reliance is placed upon *Cannon Manufacturing Co.* v. *Cudahy Packing Co.,* 267 U.S. 333 [45 S.Ct. 250, 69 L.Ed. 634], for the proposition that ownership and control of a subsidiary corporation does not subject the parent corporation to jurisdiction within the state where the subsidiary is engaged in business activity. The *Cannon* case held that the parent corporation was not "present" within the state wherein the wholly owned and controlled subsidiary carried on business, since parent and subsidiary were separate legal entities. (267 U.S. at 336-338.) In the words of Justice Brandeis, the spokesman for the court in that case: " [W]e cannot say that for purposes of jurisdiction, the business of the Alabama [subsidiary] corporation in North Carolina [the state of suit] became the business of the defendant [parent corporation]." (267 U.S. at 338.) However, it was noted in *Cannon* that the cause of action there sued upon was not related to the activities of the subsidiary in the state of suit, but was an action on a contract made by the parent and not to be performed by or through the sub-

sidiary. (267 U.S. at 334, 337-338.)[2] In the case at bar the suit is based upon transactions carried on by the subsidiary corporation in California, and the *Cannon* case itself suggested that a different result might be reached in such a situation. (267 U.S. at 337; see 14 Cal.L.Rev. 12, 13; 1956 Wis.L.Rev. 668, 672.)

Also, *Cannon* was not decided on the basis of the due process limitation on assertion of jurisdiction by a court,[3] and there is a suggestion therein that a state or federal statute providing for jurisdiction over parent corporations because of the "presence" of a subsidiary would be upheld. (267 U.S. at 336; see 104 U.Pa.L.Rev. 381, 405.) ▬ It therefore appears that no federal due process objection would arise were we to hold that under Code of Civil Procedure, section 411, subdivision 2, a foreign parent corporation could be subjected to the jurisdiction of our courts on the basis of the activities of a California subsidiary. (See *Cannon Mfg. Co.* v. *Cudahy Co., supra,* 267 U.S. 333, 336.) Though of course such an assertion of jurisdiction would have to be in accord with due process of law, as "due process" has been expanded into the set of general principles applicable to jurisdiction over foreign corporations. (See *International Shoe Co.* v. *Washington,* 326 U.S. 310, 318-320 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057] ; *Fisher Governor Co.* v. *Superior Court,* 53 Cal. 2d 222, 224-226 [347 P.2d 1].)

But the latter problem need not be labored in the instant action because the *Cannon* case has been distinguished where the corporate entities were not sufficiently preserved (*Mas* v. *Orange-Crush Co.,* 99 F.2d 675, 677 ; *Industrial Research Corp.* v. *General Motors Corp.,* 29 F.2d 623, 626-627 ; *United States* v. *Buffalo Weaving & Belting Co.,* 155 F.Supp. 454, 456-457 ;

---

[2] In the lower court, the federal district judge observed: "The transactions out of which the alleged breach of contract in the present case grew had no relation to any activity of the Alabama corporation. The alleged contract was made solely with the packing company, the Maine corporation, and related to the manufacture of cotton sheetings for use in its meat packing business; and the Alabama corporation, as such, is in no way concerned with the merits of the controversy." (*Cannon Mfg. Co.* v. *Cudahy Packing Co.,* 292 F. 169, 170.)

[3] In setting forth the issue there presented for decision, the court stated: "The obstacle insisted upon is that the [lower] court *lacked jurisdiction because the defendant* [parent] a foreign corporation, *was not within the State.* No question of the constitutional powers of the State, or of the federal Government, is *directly* presented." (267 U.S. at 336, emphasis added.) The issue in the *Cannon* case then, would appear to have turned upon application of the traditional doctrines governing assertion of jurisdiction, as set forth in such cases as *Pennoyer* v. *Neff,* 95 U.S. 714, 722 [24 L.Ed. 565].

*Alexander Young D. Co.* v. *National D. Products Corp.,* 33 F.Supp. 334, 336-337; *State* ex rel. *Grinnell Co.* v. *MacPherson,* 62 N.M. 308, 315-318 [309 P.2d 981], cert. denied, 355 U.S. 825 [78 S.Ct. 32, 2 L.Ed.2d 39]), or where the subsidiary was represented to be the same entity as the parent corporation. (*Gray* v. *Eastman Kodak Co.,* 53 F.2d 864; *S.O.S. Co.* v. *Bolta Co.,* 117 F.Supp. 59, 62-63.) The *Cannon* case has also been distinguished and jurisdiction over the foreign parent corporation sustained in the situation where the local subsidiary was found to be the *alter ego* of the sales department of the foreign parent corporation (*Pergament* v. *Frazer,* 93 F.Supp. 9, 11-12), and where the foreign parent manipulated the affairs of the subsidiary to the detriment of creditors of the subsidiary. (*Henderson* v. *Rounds & Porter Lumber Co.,* 99 F.Supp. 376, 382-384.) The *Henderson* case is particularly in point, since plaintiff has alleged a manipulation of the affairs of Gachman to the detriment of third parties dealing with Empire's California subsidiary.

It appears therefore, on the basis of the foregoing authorities, that since the cause of action sued upon is related to the activities of the subsidiary in California, and the plaintiff has alleged manipulation of Gachman by Empire to the detriment of itself as a person dealing with Gachman, which allegations appear to have been substantially corroborated by testimony of Dan Gachman, the rule of the *Cannon* case does not compel a determination that Empire is not "doing business in this State" (Code Civ. Proc., § 411, subd. 2) for purposes of the pending action.[4]

Whether a foreign corporation is doing business within this state so that jurisdiction may be constitutionally exercised depends upon the circumstances of each individual case. (*Fielding* v. *Superior Court,* 111 Cal.App.2d 490, 495 [244 P.2d 968]; *Thew Shovel Co.* v. *Superior Court,* 35 Cal.App.2d 183, 185 [95 P.2d 149].) As indicated above, the analysis is concerned with weighing the various relevant "contacts" by the foreign corporation within the state attempting to exercise jurisdiction. (*Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, 224.) In that connection

---

[4]It is noteworthy that the federal district judge, in quashing summons and dismissing the basic action in *Cannon,* observed: "If the issue I am passing upon were a question of preventing fraud through a corporate fiction or of preventing an escape from just liability, the court would have little trouble in holding that there is such identity between the two corporations as to enable the court to prevent fraud." (*Cannon Mfg. Co.* v. *Cudahy Packing Co., supra,* 292 F. 169, 176.)

petitioner argues that Empire's contacts within this state have been occasional and sporadic only, consisting primarily of intermittent sales in California in the period prior to 1957, and occasional direct shipments of steel to customers of Gachman located outside of California. ▮ It is argued that continuous activity resulting in substantial contact is necessary before a foreign corporation may be said to be doing business in this state. But the analysis of the activities of a foreign corporation should not be considered merely quantitatively, but in terms of their "quality and nature," and their connection with the obligations sued upon. (*International Shoe Co.* v. *Washington, supra,* 326 U.S. 310, 319; see *McGee* v. *International Life Ins. Co.,* 355 U.S. 220, 223 [78 S.Ct. 199, 2 L.Ed. 223] ; *Henry R. Jahn & Son* v. *Superior Court, supra,* 49 Cal.2d 855, 860-861.) Since the occasional sales in California in the past and the sporadic shipments to points outside of California apparently were not related to the cause of action sued upon, they need not be considered in the instant analysis. ▮ However, Empire has engaged in activities creating substantial contacts within California in relation to the claim asserted. There appears to have been ample evidence in the record before respondent court from which the inference could have been drawn that Empire knowingly caused its California subsidiary to make the contracts in suit while Gachman was in fact insolvent but had the appearance of financial responsibility. Empire's activities in keeping Gachman in business beyond a period safe for persons dealing with Gachman is manifestly related to plaintiff's cause of action for breach of contract, since in all probability plaintiff would not have contracted to sell steel to an obviously insolvent or defunct Gachman corporation. Furthermore, it would seem reasonable to infer that many of the alleged acts causing the claimed harm to plaintiff were carried out in California. Dan Gachman resided in Los Angeles, and he was the president of Empire during all or a substantial part of the time wherein plaintiff alleges to have been misled by Gachman's appearances (February 1959 through February 1960), and during whatever portion of that period Dan may not have been president of Empire, he was Empire's vice-president. Finally, even if all of Empire's relevant activities were technically "carried out in Texas," their alleged consequences within California would be sufficient to sustain jurisdiction over Empire in connection with plaintiff's action. (*S. Howes Co.* v. *W. P. Milling Co.* (Okla.) 277 P.2d 655,

656-657; see *Hellriegel* v. *Sears Roebuck & Co.*, 157 F.Supp. 718, 721; see also 44 Iowa L.Rev. 249, 260-261; 73 Harv.L.Rev. 909, 928-930.)

 It is further contended by petitioner that the fact that it held the note of its California subsidiary does not cause it to be "doing business" in this state. But the effect of Empire's merely holding the note of its California subsidiary is not in issue. The immediate issue stems from Empire's failure to renegotiate the note, to hold Gachman to a payment schedule, or to take any other such businesslike action, thereby enabling Gachman to stay in business beyond a period safe for third persons dealing with the California subsidiary. Such conduct allegedly resulting in harm to persons doing business in this state may be considered as a factor to be weighed in determining whether Empire is subject to jurisdiction in the pending action. (See *McGee* v. *International Life Ins. Co.*, *supra*, 355 U.S. 220, 223; *Fisher Governor Co.* v. *Superior Court*, *supra*, 53 Cal.2d 222, 225.)

 It also appears that the alleged breach of contract by Gachman occurred here, which, because of California's interest in ensuring the performance of contracts, creates a factor favoring the adjudication of the instant controversy by our courts. (*McGee* v. *International Life Ins. Co.*, *supra*, 355 U.S. 220, 223; *Carl F. W. Borgward, G.M.B.H.* v. *Superior Court*, 51 Cal.2d 72, 79 [330 P.2d 789].) Moreover, the contract was entered into and was to be performed here, another factor weighing in favor of California adjudication. (*Henry R. Jahn & Son* v. *Superior Court*, *supra*, 49 Cal.2d 855, 860-861.) It is true that Empire was not a formal party to the contract, but the plaintiff has joined Empire as a defendant in the pending action in an attempt to "pierce the corporate veil," and the avoidance of a separate lawsuit against Empire is a legitimate concern of this state. (*Fisher Governor Co.* v. *Superior Court*, *supra*, 53 Cal.2d 222, 225.) Furthermore, this jurisdiction has a manifest interest in providing a forum for local creditors injured by alleged frauds effected through a California subsidiary. (See *Henry R. Jahn & Son* v. *Superior Court*, *supra*, 49 Cal.2d 855, 860-861.)

 It is also relevant to a proper disposition of this cause that California appears to be the most convenient forum for the adjudication of the pending action against Gachman and Empire. Even though Empire has its offices and records in Texas, plaintiff has alleged that Dan Gachman is "prob-

ably . . . the only person on the side of defendants who has direct knowledge of many relevant matters," and that "trial could scarcely be conducted without Mr. Gachman." The absence of Dan Gachman as a witness, therefore, could completely frustrate a suit brought in Texas. (See *McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220, 223.) Also, Dan Gachman is an individual defendant in the pending action, and since he resides in California it is quite possible that he could not be served in Texas. (See *Henry R. Jahn & Son* v. *Superior Court, supra,* 49 Cal.2d 855, 862.) In addition, while trial in this state would necessitate the production of some of Empire's records from Texas, it has been alleged by plaintiff without material contradiction that "[s]ubstantially all of the documentary evidence which will be introduced at the trial must come from the records of the California subsidiary." (*Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, 225; *Emsco Pavement etc. Corp.* v. *City of Los Angeles,* 176 Cal.App.2d 760, 770 [1 Cal.Rptr. 814].) Admittedly, defendant Empire will be put to expense in having to defend in California, but contemporary transportation and communication make such a defense less burdensome than in former years. (See *McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220, 223; *Gordon Armstrong Co.* v. *Superior Court,* 160 Cal.App.2d 211, 217 [325 P.2d 21].) While inconvenience to the defendant is an important factor to be considered (*International Shoe Co.* v. *Washington, supra,* 326 U.S. 310, 317), there is no constitutional requirement that the hardship of litigating in a distant state need always be borne by the plaintiff. (*Henry R. Jahn & Son* v. *Superior Court, supra,* 49 Cal.2d 855, 860.)

It additionally appears that as a matter of commercial actuality, Empire has engaged in economic activity within this state and obtained the benefits and protection of our laws. (*International Shoe Co.* v. *Washington, supra,* 326 U.S. 310, 319.) This activity was carried on through the instrumentality of a subsidiary corporation, and a broad interpretation of the rule of the *Cannon* case (*supra,* 267 U.S. 333) might compel a disregard of the subsidiary's activities within this state for purposes of assertion of jurisdiction over the parent corporation. However, as hereinbefore indicated, the *Cannon* case was not grounded upon the due process limitation upon the assertion of jurisdiction by courts, and this court apparently would not be bound by the rule of the *Cannon* case if

section 411, subdivision 2 (Code Civ. Proc.) were construed contrary to the "*Cannon* Rule."

In this connection it has been stated that for purposes of jurisdiction: "The essential thing is merely whether the corporations are present within the state, whether they operate through an independent contract, agent, employee *or in any other manner.*" (*Fielding* v. *Superior Court, supra,* 111 Cal. App.2d 490, 494, emphasis added; see *Iowa Mfg. Co.* v. *Superior Court,* 112 Cal.App.2d 503, 506 [246 P.2d 681]; *Sales Affiliates, Inc.* v. *Superior Court,* 96 Cal.App.2d 134, 137 [214 P.2d 541]; see also 10 Hastings L.J. 206, 209-210.) However, since the *Cannon* case appears to be sufficiently distinguishable from the case now engaging our attention, we need not decide whether section 411, subdivision 2 (Code Civ. Proc.) is limited by the "*Cannon* Rule."

Petitioner finally argues that plaintiff can impose substantive liability upon Empire only if it is established that Empire was the *alter ego* of Gachman and that as a result thereof frauds were practiced upon plaintiff, that such substantive liability cannot be established until completion of trial on the merits, and that the jurisdictional question depends entirely upon plaintiff's establishing its case of *alter ego.* It is urged that where, as herein, the decision on the question of jurisdiction in an *alter ego* case is made prior to hearing on the merits, the court might be later embarrassed, upon the failure of plaintiff's *alter ego* case, to ascertain that the court did not have jurisdiction over the foreign parent corporation. But the latter situation is not presented herein, since jurisdiction over Empire has been established on the basis of acts of Empire itself, without resort to considering Gachman as the *alter ego* of Empire. As indicated above, Empire's acts in keeping Gachman in business beyond a period safe for third persons dealing with Gachman, when it may fairly be assumed that a disinterested creditor would have forced Gachman to close its doors, conclusively establish the jurisdiction of respondent court over Empire in connection with the pending action for breach of contract by Gachman.

The alternative writ heretofore issued is discharged, and the peremptory writ prayed for is denied.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.