[Civ. No. 43192. Second Dist., Div. Five. Feb. 20, 1974.]

WATSON'S QUALITY TURKEY PRODUCTS, INC., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; MANOR POULTRY CO., Real Party in Interest.

**COUNSEL**

Seltzer, Caplan, Wilkins & McMahon, Reg A. Vitek and James B. Franklin for Petitioner.

No appearance for Respondent.

MacCabe & Donaldson and William J. MacCabe for Real Party in Interest.

**OPINION**

**KAUS, P. J.**—The issue is whether California may properly exercise personal jurisdiction over petitioner Watson's Quality Turkey Products, Inc., a New Jersey corporation ("Watson"). The trial court denied Watson's motion to quash service of summons by real party in interest Manor Poultry Company ("Manor"). We granted an alternative writ of mandate.

FACTS

Real party Manor, a California corporation, was sued in superior court by one Orloff, for breach of a contract to deliver turkeys. Manor then filed a verified cross-complaint against cross-defendant Food Concepts, Inc., an Indiana corporation.[1] The cross-complaint alleged that in October 1972 in Torrance, Manor and Food Concepts entered into a written contract for the delivery of turkey thighs, to be shipped to Los Angeles and that Food Concepts had not delivered the turkeys, thus making it impossible for Manor to deliver the turkeys to Orloff.

Manor named no other cross-defendants, except two individuals not involved in this dispute. Petitioner Watson was not mentioned in either Manor's cross-complaint or in the written contract between Manor and Food Concepts. Manor included a boiler-plate "Doe" allegation in the cross-complaint. It does not, however, even purport to state a cause of

[1]There is no dispute whether Food Concepts is subject to California jurisdiction.

action against the "Does." At no time was the cross-complaint amended to add named cross-defendants. Instead, Manor served petitioner Watson in New Jersey as a Doe defendant.

Watson then filed a motion to quash service of summons, supported by a declaration of Albert Watson, the firm's vice-president. Jimmie Capellino, president of Manor, filed a declaration in opposition to the motion, to which were attached miscellaneous receipts. The declarations were not entirely in agreement. However, resolving any conflicts in favor of real party Manor (*Belmont Industries, Inc.* v. *Superior Court,* 31 Cal. App.3d 281, 283, fn. 1 [107 Cal.Rptr. 237]), the facts are:

Petitioner Watson did the following percentage amounts of business in California: In 1971, 1.23 percent; in 1972, 0.07 percent; in 1973, 0.07 percent. We do not know the dollar value for this percentile breakdown of California business. ██ ██ Watson apparently did no business in California before 1971.[2] Watson's sales to real party Manor in 1972 amounted to about $3,000. In 1972 Watson made a single purchase from Manor for $35,000.

Except for about six months in 1972, when Watson rented office space from Manor, Watson has never had an office in California. They have an independent nonexclusive sales representative, selling in California and other western states.[3] They do not have a certificate of qualification to do business in California; they do not own and have never owned real property in California.

Between October 1971 and July 1972 Watson paid Manor a total of about $1,300 for telephone bills, storage bills for Watson's turkeys, and Watson's share of personal property taxes.

Manor's president Capellino met Irv Watson, an officer of Watson, at Food Concepts' plant in Indiana. Irv Watson is the brother of Albert Watson. Irv told Capellino that Food Concepts "was owned by" Watson and that Food Concepts was Watson's processing plant. Both Watson brothers have offices in the Food Concepts plant.

---

[2]The burden was on real party Manor to establish that petitioner Watson was doing business in California. (*Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc.,* 276 Cal.App.2d 610, 615 [81 Cal.Rptr. 320].) Although we can accept Manor's affidavits at face value, we cannot create facts.

[3]Reading between the lines of the parties' declarations, it appears that the body occupying the office space paid for by Watson was that of the nonexclusive sales representative.

## DISCUSSION

Manor's defense of the order under attack proceeds on two fronts: 1. It argues that the record reveals adequate minimum contacts between Watson and California with respect to the cause of action stated in the cross-complaint to justify in personam jurisdiction. *(McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]; cf. *Buckeye Boiler Co.* v. *Superior Court,* 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57].) 2. It urges that Watson is sufficiently "present" in California by doing business here, to enable Manor to obtain such jurisdiction regardless of the relationship of the factors constituting such presence to the cause of action asserted against it. *(Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222, 225 [1 Cal.Rptr. 1, 347 P.2d 1].)

### *Minimum Contacts*

There is simply nothing in the record to support any transactional connection between Food Concepts, which was supposed to supply Manor with turkeys, and Watson, considered as a separate entity. Thus, there is no basis for exercising California jurisdiction over petitioner Watson on the theory that Manor's cause of action arose from Watson's business in this state. (Cf. *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893, 896. See com. to Code Civ. Proc., § 410.10.)

The fact that up to October 1972 the month of the contract between Manor and Food Concepts, there had been a quasi-landlord-tenant relationship between Manor and Watson's sales representative and some Watson products seems entirely fortuitous. Indeed, counsel appears to appreciate that any connection between Watson and the October 1972 contract between Manor and Food Concepts must arise out of their inter-corporate relationship.

This relationship is barely hinted at in the record. Watson is a New Jersey corporation; Food Concepts' home is Indiana. The inference we are asked to draw from Manor's affidavit—Irv Watson said that Food Concepts "was owned by" Watson—is that Food Concepts is a subsidiary of Watson.

■ However, "jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation. This is true even though the parent owns all of the subsidiary's stock. Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333 (1925). So a state does not have judicial jurisdiction over a parent corporation merely because a

subsidiary of the parent does business within its territory." (Judicial Council com. to Code Civ. Proc., § 410.10, quoting from Rest. 2d, § 52, com. b. [West's Annot. Code].)

Accepting Manor's statements that Food Concepts "was owned" by petitioner Watson, that both Watson brothers have offices in the Food Concepts plant, and that Irv Watson is an officer of Watson, the relationship between the two firms provides no adequate basis for subjecting Watson to California jurisdiction.

*Empire Steel Corp.* v. *Superior Court*, 56 Cal.2d 823 [17 Cal.Rptr. 150, 366 P.2d 502], indicates the quality of intercorporate relationships sufficient to justify California's exercise of jurisdiction over a parent corporation: there, the parent "wholly owned and controlled" the subsidiary; for some years, California business dealings had been with the parent corporation; once the parent established the subsidiary, customers of the parent were referred to the subsidiary. Moreover, the subsidiary was established with the parent's inventory, office furniture and fixtures. Thereafter, the subsidiary went bankrupt. (56 Cal.2d at pp. 826-827.)

In these circumstances, the court held that the parent corporation was subject to California jurisdiction, first because in all respects except corporate form and name, the subsidiary was the *alter ego* of the parent, and, second, because the facts strongly indicated that the parent corporation had manipulated the subsidiary to defraud California creditors. (*Id.* at p. 833-834.)

Nothing in the record before us can be construed to intimate more than the relationship of subsidiary to parent corporation. Even though Manor's president, Capellino, according to his declaration, had some direct dealings with Watson, Manor is unable to establish more than the bare facts set forth. Indeed, it is only by strained inference that we can establish a possible functional relationship between petitioner Watson and cross-defendant Food Concepts, that of turkey grower and turkey processor.

The record reveals no transactional connection between Watson and this state.

Manor points out that another reason for jurisdiction over Watson is that Watson's "failure to perform" occurred in California, where the deliveries of turkeys were to be made, and that it would be inconvenient for Manor to be required to litigate its claims against Watson in New Jersey and its claims against cross-defendant Food Concepts in Indiana.

This argument will not stand up, simply because nothing in either the complaint or the affidavits suggests that Watson failed to perform. It was not a party to any contract in litigation. Its responsibility for Food Concepts' breach is nebulous.

We agree that since Manor is now a defendant in a California action involving the turkeys, multiple litigation will result if Manor must sue Watson in New Jersey, if it can develop a theory on which to hold Watson for Food Concepts' breach. There is, of course, no question that Manor can properly sue Food Concepts in California. But absent some showing, as in *Empire Steel Corp.* v. *Superior Court, supra,* 56 Cal.2d 823, that Watson is attempting to hide behind Food Concepts and to manipulate Food Concepts' assets to avoid responsibility,[4] the inconvenience of suing petitioner Watson in New Jersey does not, on this record, justify subjecting it to California juisdiction.

Thus, in a way, Manor's basic problem with respect to both theories is the same: Neither the cross-complaint itself nor the declarations filed in opposition to Watson's motion to quash permit anything but speculation concerning Watson's involvement in the Orloff-Manor-Food Concepts litigation. Manor may, of course, attempt to amend its cross-complaint by actually alleging some of the matters which are only hinted at in the present record.

### Watson's "Doing Business" in California

██ The second possible basis for subjecting petitioner Watson to California jurisdiction is that Watson is doing substantial business in California, and thus subject to jurisdiction regardless of whether the cause of action sued on is "forum-related." ██ "A state has power to exercise judicial jurisdiction over a foreign corporation which does business in the state with respect to causes of action that do not arise from the business done in the state if this business is so *continuous and substantial* as to make it reasonable for the state to exercise such jurisdiction." (Com.

---

[4]Manor, in its response to the petition filed in this court, states that it "learned that FOOD CONCEPTS, a California [*sic*] corporation, had either dissolved or became inactive, and further learned that the major stockholders and officers of FOOD CONCEPTS and WATSON's TURKEY were one and the same and that they were the agents of each other." None of this was presented to the respondent court, and must be disregarded whether or not these bald allegations are sufficient to carry the burden of showing that California has personal jurisdiction over Watson. (Cf. *Arnesen* v. *Raymond Lee Organization, Inc.,* 31 Cal.App.3d 991, 994 [107 Cal.Rptr. 744].)

to Code Civ. Proc., § 410.10 ["(5) Doing Business in State"]. Italics added.)

 Watson's business in California has been summarized as amounting to less than 1 percent of its total business for the years 1971, 1972, and 1973.[5] The known specifics are that in October 1972 Watson bought $35,000 worth of turkeys from Manor; and in May and June of 1972 Manor paid petitioner Watson $2,943 for merchandise. Watson also ran up a total of $1,300 in miscellaneous phone bills, storage charges and personal property taxes between October 1971 and July 1972, and had office space in California for several months until October 1972.

Manor relies chiefly on *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893. However, neither *Buckeye* nor any other case of which we are aware would support the exercise of jurisdiction over Watson in the circumstances.

 "[U]nless the defendant's forum-related activity reaches such extensive or wide-ranging proportions as to make the defendant sufficiently 'present' in the forum state to support jurisdiction over it concerning causes of action which are unrelated to that activity [citation], *the particular cause of action must arise out of or be connected with the defendant's forum-related activity.* [Citations.]" (*Buckeye Boiler Co.* v. *Superior Court, supra,* at pp. 898-899.) (Italics added.)

The case most nearly analogous to the situation presented in this case is *Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222. There a nonresident of California sued Fisher, an Iowa corporation, based on an accident that occurred in Idaho. (53 Cal.2d at pp. 223-224.) Fisher had no employees or property in California, had not appointed an agent to receive service of process, and its products were sold in California through independent manufacturers' agents who also sold similar products of other manufacturers. Fisher was listed in telephone directories at the agents' address. The court held that there was no basis for California's assuming jurisdiction over Fisher. (*Id.* at pp. 224, 226.)

 The levels of California activities of both Fisher and petitioner Watson here are similar; if anything, petitioner Watson has less direct

---

[5]These percentages can, of course, be deceiving; no one would question that 1 percent of the business of General Motors would be "substantial." However, we are furnished with no information to determine the significance of 1 percent in Watson's turkey business. (*Ante,* fn. 2.)

contact with California, having only one independent agent, and apparently minimal business transactions. Also, like the litigation in *Fisher*, Manor's dispute with Watson—whatever it is—does not arise out of Watson's activities in California. Rather, as we have noted, the sole basis for connecting Watson to Food Concepts is the corporate relationship.

The only difference between the situation in *Fisher* and that here is that Manor is a California corporation. *Fisher* points out that the "interest of the state in providing a forum for its residents" is one of the factors to be considered in determining whether jurisdiction should be exercised. (53 Cal.2d at p. 225.) But the fact that a California resident has the misfortune to get involved in a business dispute with one non-California firm cannot without more provide a reasonable basis for imposing jurisdiction on another foreign firm. (Cf. *Belmont Industries, Inc.* v. *Superior Court, supra,* 31 Cal.App.3d 281, 284-285; *Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc., supra,* 276 Cal.App.2d 610, 619.)

The alternative writ is discharged; the peremptory writ is granted.

Stephens, J., and Ashby, J., concurred.