[Civ. No. 10324. Third Dist. May 28, 1962.]

GEORGETOWN DIVIDE PUBLIC UTILITY DISTRICT, Plaintiff and Respondent, v. HENRY FRANCIS BACCHI et al., Defendants and Appellants.

Chamberlain & Chamberlain and T. L. Chamberlain, Sr., for Defendants and Appellants.

Orrick, Dahlquist, Herrington & Sutcliffe, John R. Couzens, Christopher M. Jenks and Richard C. Galladin for Plaintiff and Respondent.

PEEK, P. J.—This is an appeal from an order of the El Dorado County Superior Court denying appellants' motion for an order directing separation of the proceedings and for change of venue in an action in eminent domain, initiated in El Dorado County by respondent against appellants and others.

Respondent is a public utility district situated wholly within El Dorado County. All of appellants' land sought to be condemned in fee, or over which flowage rights are sought, is situated within El Dorado County, but outside the exterior boundaries of respondent district. The land is sought to be condemned for eventual use as a reservoir site.

According to the pleadings, the 200 acres involved are owned by appellants Henry, Betty, Byron, and Carol Bacchi, who are residents of El Dorado County (parcels 5, 6, 7, 9, 11, 15, 16, 21, 26, and 27). Appellants Byron and Earl Davis, who are residents of Sacramento County, allege an interest in parcel 15 and in parcels 21, 25, 26, and 27, over

which easements are sought. Appellant Bethel Mowry, who resides in Santa Clara County, alleges an interest in parcels 15, 21, 26, and 27. Respondent district joined in one complaint and in one cause of action all of the above-mentioned property and the rights of all of the appellants. The answer thereto alleged that because of the unity of use and commingling of interests of appellants, the lands should be considered as a unit.

The motion for change of venue requested a separation of proceedings involving the above three groups of appellants from all others and a transfer to a neutral county (other than Sacramento or Santa Clara). Appellants contend that they would have this right by virtue of section 394 of the Code of Civil Procedure if a city were the condemning entity, and that the Legislature intended a public utility district to be subject to the same procedure when it drafted section 16404 of the "Public Utilities District Act" (Public Utilities Code). Section 16404 provides in part as follows:

"A district may exercise the right of eminent domain in the manner provided by law for the condemnation of private property for public use . . . In the proceeding, venue, and trial relative to the exercise of the right to condemn property the district has the same rights, powers and privileges as a *municipal corporation.*" (Italics added.)

It is urged by appellants that the term "municipal corporation," as referred to in said section, includes an incorporated city, and that the following portion of section 394 of the Code of Civil Procedure therefore governs:

"Whenever an action or proceeding is brought by a county, . . . or *city,* against a resident of another county, . . . or city, or a corporation doing business in the latter, the action or proceeding *must* be, on motion of *either party,* transferred for trial to a county, . . . other than the plaintiff, if the plaintiff is a county, . . . and other than that in which the plaintiff is situated, if the plaintiff is a *city,* and other than that in which the defendant resides, or is doing business, or is situated." (Italics added.)

Specifically, it is contended that respondent is in the same position as a city attempting to condemn land outside the city limits but within the county, thereby giving at least the nonresident appellants the right to a change of venue found in section 394. Appellants concede that a strict interpretation of section 394 would not compel a venue transfer as to the

four Bacchi appellants, since they are residents of the same county as the condemning entity. ▮▮ If a city is the condemner, the precise language of section 394 does not give the condemnees, who are residents of an unincorporated area in the same county, the right to change of venue. (See 1 Chadbourn, Grossman and Van Alstyne, California Pleading [1961] § 367, p. 308.) However, appellants suggest that it is just as ''logical'' to allow a nonresident of the condemning district to have a right of change of venue as a nonresident of the county, and that the unity of use characteristic of the land, plus avoidance of multiplicity of actions, are additional factors dictating the transfer of venue as to *all* of the appellants. In resolving these problems, our initial inquiry must be directed to the meaning of the language used in section 16404.

▮ Respondent argues that what the Legislature meant by section 16404 was simply that public utility districts should have the same power to acquire by condemnation as do ''municipal corporations'' under sections 10001 through 10213 of the Public Utilities Code. We cannot accept this argument because the powers of a public utility district are clearly spelled out in section 16404 and in other sections of the code. For example, section 16461 provides:

''A district may acquire, construct, own, operate, control, or use, within or without or partly within and partly without the district, works for supplying its inhabitants with light, water, power, heat, transportation, telephone service, or other means of communication, or means for the disposition of garbage, sewage, or refuse matter, and may do all things necessary or convenient to the full exercise of the powers granted in this article.''

Of course, section 16404 itself gives the right of eminent domain to the district, and section 16405 provides that: ''A district may proceed in the name of the district in condemnation proceedings.''

Furthermore, respondents' argument does violence to the plain language of section 16404: ''In the proceedings, *venue,* and trial relative to the exercise of the right to condemn property the district has the same rights, powers, and privileges as a *municipal corporation.*'' (Italics added.)

Respondent apparently would prefer to avoid further inspection of section 16404, for it next argues that since a public utility is not specifically mentioned in section 394, it was not

meant to be covered by that section. Much reliance is placed on the case of *People* v. *Spring Valley Co.*, 109 Cal.App.2d 656 [241 P.2d 1069], in support of this argument. However, this contention merely begs the question presented by this appeal. The plaintiff in the *Spring Valley* case was the Department of Public Works of the State of California, and the court, as an ancillary matter, addressed itself to defendant's contention that the state was the *alter ego* of the counties comprising it, and that actually the counties should be considered the plaintiff; hence, section 394 should be applicable. The court, in specifically rejecting this argument, said: "If the Legislature had intended the section [394] to apply whenever a county has an indirect interest in an action, it could easily have said so." (P. 670.)

The sense of appellants' contention in this regard is that the Legislature has "said so" in the case of condemnation by a public utility; that is, section 16404 (not 394) puts the district in the same position as a city condemning the land, and in this sense only do appellants claim the right to change of venue as specified in section 394 (applicable to cities).

Finally, respondent argues that since the phrase "municipal corporation," as used in California opinions, is, in some respects, broader than the three entities discussed in section 394 and in other respects, flatly contradictory, therefore, we must conclude that there is no relationship between them at all. With this we cannot agree. Respondent does not dispute that a "city" is embraced within the common meaning of a "municipal corporation," and we have been referred to no California decision which disputes this proposition. Nor does respondent suggest any alternative meaning to be given the phrase "municipal corporation."

It is an elementary principle of statutory construction that every word, phrase, or provision is presumed to have been intended to have a meaning and perform a useful function. (*Read* v. *Rahm*, 65 Cal. 343 [4 P. 111].) Hence, we must attribute the common meaning to the phrase. Accordingly, respondent is in the same position as that of a city condemning land under section 394.

This interpretation would appear to be wholly consistent with section 12703 of the Public Utilities Code, which gives a municipal utility district "all the rights, powers, and privileges of an incorporated city" on the question of venue relative to a condemnation suit. We can conceive of no rationale

to support variable venue rules in the condemnation of land outside the utility district, but within the county, because of the nature of the district as either municipal or public.

While it is true that the flat language of section 16404 (and § 12703) only confers powers upon the district, and makes no specific mention of rights in the condemnee to which the district may be subject, we believe the latter concept to be implicit. Respondent resists the motion for change of venue, made pursuant to section 394, and in this sense the rights vested in appellants by said section are viewed as disabilities by respondent. ▮ It would be a strange rule indeed if respondent is held to be entitled to the rights, but not subject to the disabilities enumerated in section 394. Absent a showing of legislative intent, we will not presume such an unusual rule.

▮ Hence, the Davises and Bethel Mowry, as nonresidents of El Dorado County, are entitled to a change of venue based on the analogy of the application of section 394, found in *City of Oakland* v. *Darbee*, 102 Cal.App.2d 493 [227 P.2d 909]. (See also *City of Long Beach* v. *Lakewood Park*, 118 Cal.App.2d 596 [258 P.2d 538].) In the *Darbee* case, the city was condemning land located outside the city limits, but within Alameda County. Some of this land was owned by residents of the City and County of San Francisco, and these defendants sought a change of venue pursuant to section 394. The court ordered the proceedings separated pursuant to section 1244, subdivision 5 of the Code of Civil Procedure, and a change of venue to a neutral county pursuant to section 394. Other defendants, residents of Alameda County, did not request a venue change.

The present case differs from Darbee in that the resident defendants join in the request for change of venue, pointing to the alleged common ownership of certain parcels by both resident and nonresident appellants, and the avoidance of multiplicity of actions if they may accompany the nonresident appellants. No common ownership by residents and nonresidents in any parcels was indicated in Darbee, and no other appellate decisions appears to have ruled on this facet of section 394.

Respondent, however, insists that the decision of this court in *County of Nevada* v. *Phillips*, 111 Cal.App.2d 428 [244 P.2d 495], is a "square holding" to the effect that resident defendants cannot move to transfer under section 394. How-

ever, as is clearly pointed out in that decision, on the basis of the record presented, the only moving parties were residents of the county. The case now before us differs in that the pleadings show interlocking ownership by both residents and nonresidents of some parcels, and both residents and nonresident owners are moving for the change of venue. In the Phillips decision the question of whether the resident defendants were entitled to the change of venue under facts similar to those now presented was specifically left open, and properly so, since the facts of the case did not raise the issue. The comment of this court was: ". . . it is only when the defendants or one of them is a resident of another county that the court is obligated to change the place of trial, at least as to such defendant . . . ." (P. 429.)

Respondent cautions that in a case like this, where both resident and nonresident defendants are properly joined, the action can be properly characterized as a "mixed action" to which section 394 does not even apply. The term "mixed action" is a generic classification employed by the authors of a recently published pleading text to describe actions in which two or more inconsistent venue provisions appear to be concurrently applicable to the same case. (1 Chadbourn, Grossman and Van Alstyne, California Pleading [1961] § 375, p. 324.) The learned authors of this text note the "disparate results" flowing from the "judicially formulated approaches to mixed action venue problems" and suggest that the most desirable solution to the entire problem would be a legislative one. (§ 389, p. 359.) But, until a legislative solution is effected, we prefer to follow the path charted by the Darbee decision, and the discussion of this court in the *Phillips* case, by holding that section 394 is applicable to the present case.

Furthermore, considering the exact facts presented by the instant case, we hold that the change of venue should be granted to both the resident and nonresident groups of appellants, parties to this appeal. The law does not favor a multiplicity of lawsuits, and there is little sense in having multiple trials involving substantially the same expert testimony relative to a unitary block of land. Nonresident appellants, Byron Davis, Earl Davis, and Bethel Mowry, have a right to change of venue to a neutral county, and to avoid needless multiplicity, we hold that the Bacchi appellants may join in the transfer.

In answer to respondent's contention that " 'all reasonable

inferences which are to be drawn must be in support of the trial court's order,' " and that the trial court's discretion in refusing to transfer venue (at least as to the resident [Bacchi] appellants), will not be reviewed in the absence of a clear showing of its abuse, we note that no *exercise* of discretion is apparent from any inference. We are not aided by an opinion giving the reasons for the trial court's rulings, but since the nonresidents were not allowed a change of venue, any conceivable inquiry by the trial court as to whether the residents might, in the court's discretion, join in the transfer was precluded.

We hold, as a matter of law, that the nonresident appellants had a right to the transfer to a neutral county for the reasons noted and further, that the residents may join in the transfer in order to expedite the trial and avoid a multiplicity of actions.

It should be emphasized that our conclusion is predicated solely on the precise facts presented in this case and no attempt has been made to express an opinion upon the ramifications of section 394 in other situations. (For a critique of the section see 1 Chadbourn, Grossman and Van Alstyne, California Pleading [1961] § 367, pp. 301-308.)

The order of the trial court is reversed, and the court is directed to enter its order granting the motion for separation and to enter an order for change of venue to a county other than the county of residence of the appellants.

Schottky, J., and Pierce, J., concurred.