[S.F. No. 23376. Apr. 27, 1976.]

WESTINGHOUSE ELECTRIC CORPORATION et al., Petitioners, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent; SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT et al., Real Parties in Interest.

[And four other matters.]*

*American Re-Insurance Company v. Superior Court (S.F. 23377); Rohr Industries, Inc. v. Superior Court (S.F. 23378); Parsons, Brinckerhoff-Tudor-Bechtel v. Superior Court (S.F. 23379); Parsons, Brinckerhoff, Quade & Douglas v. Superior Court (S.F. 23380).

**COUNSEL**

Moses Lasky, Robert N. Lowry, Charles B. Cohler, Brobeck, Phleger & Harrison, Pettit, Evers & Martin, Joseph Martin, Jr., Allan J. Joseph, Oliver L. Holmes, Susan L. Paulus, Robert W. Heidrich, Alfred J. Waldchen, Edward J. Ruff, Robert M. McLeod, H. Roger McPike, Jon T. Anderson, James P. Hargarten and Thelen, Marrin, Johnson & Bridges for Petitioners.

No appearance for Respondent.

Robert D. Raven, Melvin R. Goldman, Stephen S. Dunham, Charles R. Farrar, Jr., Nelson G. Dong, Linda E. Shostak, Palmer Brown Madden, Morrison & Foerster, Malcolm Barrett, Thomas Jackson and Gerald P. Martin, Jr., for Real Parties in Interest.

## OPINION

**MOSK, J.**—We decide five related matters that revolve around conflicting interpretations of one ambiguously worded sentence in a change of venue statute, Code of Civil Procedure section 394, subdivision (1).

The matters come to us on petitions for writs of mandate. In the action below, the San Francisco Bay Area Rapid Transit District (BART) seeks damages of more than $100 million from its principal contractors, who provided the district with allegedly defective equipment and faulty services. Defendants filed change of venue motions in an attempt to transfer the case out of respondent Alameda Superior Court. The court denied the motions, concluding (1) section 394 does not apply to a multi-county agency plaintiff such as BART, and (2) defendants are, in any event, ineligible to seek relief under section 394 because each of them does business in Alameda County.[1]

### I

The first issue is whether a private party defendant sued by a multi-county agency may ever obtain the change of venue provided for by section 394. The problem arises because of the ambiguity in the second sentence of the section, which provides that "Whenever an action or proceeding is brought by a county, city and county, city, or *local agency within a certain county* . . . against a resident of another county . . . or a corporation doing business in the latter . . ." the action must be transferred, on motion of either party, to a neutral county. The court apparently reasoned that in a suit brought by an agency the transfer remedy is available only when plaintiff is located wholly within one county. As BART's operations encompass not only Alameda County, but also Contra Costa County and the City and County of San Francisco, the court held that the district is not a "local agency within a county" and a change of venue is not available.

---

[1]Review is by writ of mandate, as authorized by Code of Civil Procedure section 400.

Some of the defendants urge that the phrase "within a certain county" modifies not just "local agency," but the entire first part of the sentence. Under this interpretation, a transfer to a neutral county is available in appropriate cases whenever a governmental entity brings suit "within a certain county . . . ."

While BART proposes a contrary tenable grammatical interpretation,[2] it does not necessarily follow that section 394 precludes mandatory change of venue in actions brought by multi-county agencies. Assuming that "within a certain county" modifies only "local agency," BART may still be a "local agency within a certain county" for the purposes of section 394. Indeed, an analysis of the phrase within the context of the language of and purpose behind the entire statute leads inexorably to that conclusion.

To begin with, we have problems with BART's assertion that the clause on its face has a plain meaning.[3] The district's position would have merit if the statute referred to a "local agency located wholly within a certain county." But the phrase "local agency within a county" is susceptible of another plausible interpretation in the context of the entire sentence. Prior to the Legislature's inclusion of governmental agencies within the scope of section 394, the second sentence of the section referred to suits "brought by a county, city and county, or city, against a resident of another county, city and county, or city . . . ." Its meaning was

---

[2] By a 1970 amendment, the clause, "or local agency within a certain county, or city and county" was added as a unit to section 394, which most likely indicates that "within a certain county" modifies "local agency," not the entire first part of the sentence. Indeed, this court, without discussion, has treated "local agency within a certain county" as a unit. (*Garrett* v. *Superior Court* (1974) 11 Cal.3d 245, 248 [113 Cal.Rptr. 152, 520 P.2d 968].) However, we need not decide that particular issue, if, as we conclude, BART is a "local agency within a certain county . . . ."

[3] BART's only authorities in support of the "plain meaning" of "within a county" are a legal dictionary and an unrelated decision of the New Mexico Supreme Court. In *State ex rel. Barela* v. *New Mexico State Bd. of Ed.* (1969) 80 N.M. 220 [453 P.2d 583], a statute provided: "Whenever any county board of education shall determine . . . that substantial economies can be effected . . . by the consolidation of any two or more rural school districts *within the county* . . . the state board of education may order the consolidation of such districts . . . ." (Italics added.) The New Mexico court held that the consolidation of school districts located in separate counties was invalid under the act. The court properly reasoned that the statute could only be interpreted as allowing a single county board of education to recommend consolidation of districts located within its borders. If the case had dealt with the question of multi-county school districts, it might be marginally relevant to our determination, but it did not. In the case at bar, we are seeking to ascertain not whether "within a county" may refer to an entity located entirely outside of a county, but whether, in the overall context of a remedial statute, it may apply to an agency which operates both within and outside a certain county.

clear: the sentence applied to suits brought by a county against residents of another county, by a city against residents of another city, and by the City and County of San Francisco against non-San Franciscans. However, when the Legislature sought to add agencies to the list of governmental plaintiffs subject to section 394, the addition of the phrase "local agency" by itself would obviously have been inadequate. A suit by a "local agency" against "a resident of *another* county" is grammatically irreconcilable, because an agency is not a county. Therefore, the phrase "within a certain county" may well have been added to "local agency" not to exclude regional agencies from the scope of the section, but to insure that the phrase "against a resident of another county" would continue to have meaning. The proper interpretation of "within a certain county" cannot be decided outside of the overall context of section 394.

■   The purpose of section 394 " 'is to guard against local prejudices which sometimes exist in favor of litigants within a county as against those from without and to secure to both parties to a suit a trial upon neutral grounds.' " (*Finance & Construction Co.* v. *Sacramento* (1928) 204 Cal. 491, 493 [269 P. 167].) As the statute is remedial in its purpose, it should receive a liberal construction which will promote rather than frustrate the policy behind the law. (*Ibid.; City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256 [330 P.2d 888].)

■   These general principles were applied to a proceeding brought by an agency in *Garrett* v. *Superior Court* (1974) *supra,* 11 Cal.3d 245. In that case, the Riverside County Flood Control and Water Conservation District instituted condemnation proceedings, and the nonresident owners of the affected property moved for a change of venue under section 394. In holding that the landowners were entitled to relief provided by the mandatory change of venue provisions of the statute, we declared, "District is the type of 'local agency within a certain county' which has a potentially prejudicial advantage in a condemnation suit against a nonresident defendant. . . . Although there are other water districts and zones within Riverside County, it is still possible that a Riverside County juror will also be a District taxpayer with an interest in keeping the condemnation award unreasonably low. This situation would be precisely one which the Legislature must have intended to avoid by enacting section 394." (*Id.,* at p. 248.)

The applicability of the *Garrett* reasoning to the present case is evident. BART is authorized to levy a property tax on Alameda County homeowners (Pub. Util. Code, §§ 29121, 29123) and is also funded by a

½ percent sales tax on goods bought in Alameda County. (Rev. & Tax. Code, § 7261, subd. (a); Pub. Util. Code, § 29140.) While it was "possible" in *Garrett* that a juror would be a district taxpayer, it is virtually *certain* that an Alameda County juror in this case will be a BART taxpayer with more than an academic interest in a damage suit totaling more than $100 million. We are confronted with the paradigm case of potential prejudice that the Legislature sought to avoid by enacting section 394.

But BART contends that its interpretation of section 394 is justified on the ground that the Legislature apparently determined that any taxpayer prejudice in favor of a single-county agency is "diluted" in the case of a regional agency, and thus application of the transfer remedy is precluded. This reasoning ignores subdivision (3) of section 394, which defines a local agency as "any governmental district, board, or agency, or any other local governmental body or corporation, but shall not include the State of California or any of its agencies, departments, commissions, or boards." The distinction made by the Legislature is between state agencies and other governmental agencies, not between regional agencies and single-county agencies. (*Garrett, supra,* p. 247.) To the extent that the Legislature took into account the argument that potential prejudice could be diluted in suits involving governmental entities, it found that such dilution might take place in actions by or against the state government, not in litigation concerning multi-county agencies.[4]

It might be argued that the above-quoted definition of "local agency" is not dispositive of the question before us, because, in contrast to other portions of section 394, the Legislature in the second sentence refers not just to a local agency, but to a "local agency within a certain county," and thus an exception in certain situations may have been carved out to the general treatment of local agencies in section 394. The ramifications of such an argument, however, demonstrate its implausibility. It is worthwhile to consider all the possible actions involving local agencies that are covered unambiguously by other parts of section 394. The first sentence of subdivision (1) specifies that an action pitting any agency, regional or single-county, against another governmental entity may not

---

[4]Of course, it is quite possible that the Legislature did not consider the dilution of prejudice argument at all. State agencies are likely excluded from the scope of section 394 for the practical reason that even where taxpayer prejudices exist in favor of state agencies, there are no "neutral" counties to which a suit may be transferred.

even be brought in the home county of the local agency.[5] The third sentence provides that in an action brought against a local agency of any kind, change of venue will be available in most circumstances.[6] And, even under BART's interpretation, when a suit is brought by an agency located entirely within a county, the transfer remedy is applicable. Thus, if we were to accept BART's argument, a neutral site for a trial could be obtained in actions brought against a regional or single-county agency by any kind of plaintiff; actions brought by either kind of agency against another governmental entity; and actions brought by a single-county agency against any class of defendant. But no relief would be available in proceedings brought by a regional agency against a private party. While it is theoretically conceivable that the Legislature intended such an anomalous result, it is certainly not likely, and we will interpret section 394 to avoid "absurd consequences." (*City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) *supra,* 164 Cal.App.2d 253, 256-257.) For the foregoing reasons, we conclude that BART is "a local agency within a certain county" for the purposes of section 394.

## II

However, section 394 does not allow every defendant sued by a local agency to obtain an automatic transfer of venue. The statute applies to suits brought by an agency "against a resident of another county . . . or a corporation doing business in the latter." A literal application of the statute to the present corporate defendants would permit each of them conducting any business outside of Alameda County to obtain a change of venue, no matter how much business it also conducted inside Alameda County. However, the statute cannot be so mechanically construed, but must be interpreted in light of its purposes. Thus, in *City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) *supra,* 164 Cal.App.2d 253, the Court of Appeal held that section 394 did not apply to the defendant telephone company doing a substantial amount of business in the forum Los Angeles County, even though it also did business in other counties

---

[5]The first sentence of section 394, subdivision (1), provides: "An action or proceeding against a . . . local agency, may be tried in . . . the county in which such . . . local agency is situated, unless such action or proceeding is brought by a county, or city and county, a city, or local agency, in which case it may be tried in any county, or city and county, not a party thereto and in which the city or local agency is not situated."

[6]The third sentence of section 394, subdivision (1), provides, in pertinent part, "Whenever an action or proceeding is brought against a . . . local agency, in any county, or city and county, . . . other than that in which the defendant is situated, the action or proceeding must be, on motion of the said defendant . . . [transferred to a neutral county] . . . ."

throughout the state. The court concluded that "the venue provisions under this section may not be invoked by a corporation defendant doing business in a county in which an action is brought against it by a city situated therein." (*Id.*, at p. 259.)

The question then becomes whether all of the defendants are doing business in Alameda County. The respondent court found so "for the reasons set out in plaintiff's memorandum . . . ." We must determine whether the court, in adopting BART's arguments, applied a correct legal test for deciding that defendants are doing business in Alameda County.

BART asserts—and the court apparently concurred—that "doing business" can be given the same construction in the present case as it is in cases involving service of process on foreign corporations. Under this jurisdictional construction of "doing business," even a single act by a corporation in Alameda County might preclude it from obtaining a change of venue. (See *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57].)

BART's position seems to be based on the fallacious assumption that there is a universal and invariable definition of "doing business" suitable for all purposes. However, "The term 'doing business' . . . is not . . . to be confused with the same term when used in statutes having a different purpose or in proceedings involving different issues." (*The Thew Shovel Co.* v. *Superior Court* (1939) 35 Cal.App.2d 183, 185 [95 P.2d 149]; see also *Jeter* v. *Austin Trailer Equipment Co.* (1953) 122 Cal.App.2d 376, 381 [265 P.2d 130]; *City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) *supra,* 164 Cal.App.2d 253, 261 (cases dealing primarily with service of process deemed not controlling for purposes of § 394 motion).)

Whether California has jurisdiction over a foreign corporation involves issues substantially different from those inherent in a section 394 question. In the former, courts are faced with conflicting policy considerations of whether a suit should be maintained. On one hand, it is both unconstitutional and unfair to subject an out-of-state corporation with no relationship to California to long arm service of process. On the other hand, it is also unjust to give total immunity from suit in California to a corporate defendant which has taken advantage of commercial opportunities in the state. Thus, in the jurisdictional context, we have equated "doing business" in California with such minimal contacts that maintenance of a suit against the foreign corporation does not offend

traditional notions of fair play and substantial justice. (*Henry R. Jahn & Son* v. *Superior Court* (1958) 49 Cal.2d 855, 858 [323 P.2d 437].)

The change of venue issue is directed at completely different policy considerations. At issue is not whether it is proper to subject a corporation to trial, but the locale where that trial should be held. The consequence of finding that a corporation is not doing business in a county is not the dismissal of the suit against it, but merely the transfer of the cause to another county. Further, a section 394 motion to transfer a case from a certain court presupposes the original court has proper jurisdiction. (*Skidmore* v. *County of Solano* (1954) 128 Cal.App.2d 391, 394 [275 P.2d 613].) It is inappropriate to apply a "minimum contacts" test to determine whether defendants are doing business in Alameda County, because it would be impossible to sue defendants in the first instance if there were no such contacts. (See also Code Civ. Proc., § 395.) Clearly, the minimum contacts jurisdictional test will not resolve what constitutes "doing business" under section 394.

Only two cases have dealt with the issue: *City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) *supra,* 164 Cal.App.2d 253, and *Finance & Construction Co.* v. *Sacramento* (1928) *supra,* 204 Cal. 491. In *City of L. A.,* the definition of "doing business" was merely a peripheral issue. After reaching the major determination—that the phone company could not invoke section 394 if it was doing business in the county where the action was brought—the court, citing a federal tax case, defined doing business as " 'holding one's self out to others as engaged in the selling of goods or services.' " (164 Cal.App.2d at p. 262.) The phone company, of course, was held to be "doing business" in the county under that definition, as it would have been under any reasonable definition.

In *Finance & Construction Co.,* this court considered the question more extensively. There plaintiff corporation, which had its principal place of business in San Francisco, brought suit in Yolo County against the City of Sacramento. The city's right to a transfer of venue was upheld by the court because plaintiff owned considerable farm land in Yolo County, ownership which could potentially trigger local bias in favor of plaintiff. We concluded that owning the land constituted doing business in the county: "A person may become as *intimately identified with the affairs of a community, and as closely associated with the people of such community* in the ownership of a farm and the growing thereon of products of the soil as those who are engaged in carrying on a store or conducting a mill or foundry in the same community." (204 Cal. at p. 494.) (Italics added.)

The language in *Finance & Construction Co.* aids us considerably in articulating a definition of doing business in light of the purposes of section 394, which, as noted, is designed to insure a fair trial by protecting against local bias. The legislation is based on the premise that there is a substantial risk of prejudice in favor of a local governmental entity. It is also apparently the judgment of the Legislature that any prejudice in favor of a governmental entity plaintiff will be so mitigated that a change of venue normally will not be needed when defendant corporation is "doing business" in the county. It is apparent that "doing business," viewed in the perspective of guaranteeing a defendant a fair trial, relates to defendant's image in the community. If defendant is viewed as an outside corporation, then diminution of the presumed prejudice is unlikely to occur. If, on the other hand, defendant is viewed as closely associated with the community, there is less likelihood of the local bias that section 394 is designed to prevent. ■ We therefore conclude that a corporation is doing business in a county for purposes of section 394 only if its activities in the county are substantial enough that the corporation can reasonably be viewed as being intimately identified with the affairs or closely associated with the people of the community.[7] Under this standard, a corporation with its main place of business in the county in which it is sued cannot invoke section 394. Likewise, a corporation with a major branch office in the county would be denied the benefits of the statute. But a corporation with its principal place of business elsewhere and with only limited contacts in a county may obtain a change of venue in an action brought by a local governmental entity. Having articulated the standards for "doing business" in Alameda County, we turn now to their application.

## III

■ Defendant Rohr Industries, Inc., which supplies transit vehicles to the BART project, has its headquarters and principal place of business in Chula Vista, a city in San Diego County. An initial question arises whether Rohr's work in Alameda County on the BART project itself—which consists mainly in delivering trains built in Chula Vista— should be discounted in the determination whether the company is doing business in the county.

---

[7]The question in each case is whether the corporation's activities are such that the corporation is reasonably likely to be viewed as an outsider, not whether it is actually so viewed. A change of venue because of actual prejudice is within the purview of section 397, subdivision 2, not section 394. The latter section "is designed to obviate the appearance of prejudice as well as actual prejudice or bias." (*City of Alameda* v. *Superior Court* (1974) 42 Cal.App.3d 312, 317 [116 Cal.Rptr. 806].)

No authority can be found directly on point, although in two cases courts seem to have assumed, without discussion, that activities related to the subject matter of the litigation under consideration cannot be weighed in the evaluation of whether a defendant is doing business. In *Yuba Co.* v. *North America etc. Min. Co.* (1909) 12 Cal.App. 223 [107 P. 139], the county sought to enjoin defendant corporation from depositing mining debris in a river. Despite defendant's mining activities in the county, the Court of Appeal ruled that defendant was not doing business there and the case should be transferred. In *City of Long Beach* v. *Lakewood Park* (1953) 118 Cal.App.2d 596 [258 P.2d 538], a transfer was obtained in an eminent domain action by a corporate owner of the land.

The results of these venerable Court of Appeal cases appear to be sound. Services related to the subject matter of particular litigation are not normally the type of activities that constitute "doing business" within the purposes of section 394. A governmental entity, it will be remembered, has a presumptive prejudicial advantage in an action it brings in its own county. That advantage is normally presumed mitigated, if not eliminated, when the defendant does business in the county. Thus, even though taxpayer jurors may be predisposed in favor of BART because of the potential effect on their taxes, they may overcome that understandable bias if they realize that unjustly favoring BART will injure a local business and its contribution to the community economy. However, when the defendant corporation has its principal place of business outside of Alameda County and "does business" in the county only by virtue of its BART contract, no diminution of the presumed bias appears likely. If anything, jurors may be suspected of further bias against the corporate interloper brought in only to work on the BART contract.

Moreover, to include in the definition of doing business in the county all activities relating to the subject matter of the litigation would prevent the use of section 394 by a nonresident corporate defendant in almost any contract action brought by a governmental entity. A motion under section 394 to transfer venue presupposes that the action was originally brought in a proper court. Under section 395.5, the proper forum for a contract action against a corporation is the corporation's principal place of business or the place where the contract is to be performed. If the suit is brought in the principal place of business of a corporate defendant, section 394 will of course be inapplicable. If the suit is brought where the contract is to be performed and performance constitutes "doing business" in the county, then the defendant will have no recourse to section

394. The section must be construed to avoid such an untenable consequence.

We can, perhaps, hypothesize exceptional circumstances in which activities relating to the subject matter of the litigation under consideration might be weighed in the determination whether a corporation is doing business in a county. If, for example, a corporation were formed in Alameda County solely to work on the BART project, failure to consider its BART-related activities would lead to a conclusion that it does business in no county. Similarly, if Rohr established a major manufacturing division in Alameda County to build the transit vehicles and retained its plant there for several years, it might arguably be viewed as being closely associated with the community. But we are presented with neither of those situations. Rohr maintains its principal place of business in San Diego County and built the transit vehicles there. Its inevitable and incidental contacts with Alameda County in delivering the vehicles must be discounted in the determination whether the company does business in the county.

In addition to its work on the BART contract, Rohr has three other contacts with Alameda County. First, one Rohr employee temporarily assigned to Oakland as the supervisor of Rohr's product support work, occasionally visits sites of other Rohr projects throughout the country. Second, one of Rohr's technicians is temporarily assigned to the Alameda Naval Air Station to repair a storage device located in one of the Navy's aircraft hangars.[8] Third, Rohr has made purchases of goods and services in Alameda County. Some of these purchases were for use of the Alameda County employees working on the BART project, while other goods were shipped to Rohr headquarters in Chula Vista.

BART asserts that this court must also consider the activities of Flxible Co., a wholly owned Rohr subsidiary located in Ohio, that sells buses to

[8] Rohr argues that we should discount this work entirely, as it is performed in a federal enclave. In support of this proposition, it cites cases dealing with service of process. BART counters with citations to equally irrelevant federal legislation granting states the power to levy sales taxes and enforce state unemployment insurance acts within federal territory, an Executive Order defining the land in question as within Alameda County, and more service of process cases. We cannot lose sight of the fact that this case arises in the context of a change of venue motion. For purposes of section 394, substantial activity on the station would of course constitute doing business. A company performing a major project at a station becomes no less closely associated with the surrounding community because the state has no legislative authority on the station. We therefore will not totally discount the activities on the Alameda Naval Air Station, although how substantially repair work by one technician should be weighed is a different question entirely.

A.C. Transit in Alameda County. The only support for this proposition is a service of process case, in which a federal court held a Canadian corporation subject to Utah's jurisdiction because of the corporation's interlocking directorate with and integrated control of a Utah subsidiary. (*Massey-Ferguson Ltd.* v. *Intermountain Ford Tractor Sales Co.* (10th Cir. 1963) 325 F.2d 713.)

But even in the area of jurisdiction, it has never been the general rule that a corporation will be subject to suit in a state because of the activities of its wholly owned subsidiary. (*Cannon Mfg. Co.* v. *Cudahy Co.* (1925) 267 U.S. 333, 336-337 [69 L.Ed. 634, 642-643, 45 S.Ct. 250].) Jurisdiction over a foreign parent corporation will only be sustained where the foreign parent manipulates the subsidiary to the detriment of creditors or the subsidiary is the *alter ego* of the parent. (*Empire Steel Corp.* v. *Superior Court* (1961) 56 Cal.2d 823, 831 [17 Cal.Rptr. 150, 366 P.2d 502].) No allegations of manipulation have been made. Nor has BART established that Flxible is the *alter ego* of Rohr. ■ "The corporate entity of the wholly owned subsidiary will be disregarded only when recognition of the separate entities of parent and subsidiary would produce fraud or injustice. [Citation.] Bad faith in one form or another must be shown before the court may disregard the fiction of separate corporate existence [citations]." (*Luis* v. *Orcutt Town Water Co.* (1962) 204 Cal.App.2d 433, 443-444 [22 Cal.Rptr. 389]; see also *Watson's Quality Turkey Products, Inc.* v. *Superior Court* (1974) 37 Cal.App.3d 360, 365 [112 Cal.Rptr. 345].) There is no hint in this case that Rohr established Flxible Co. in order to take advantage of a change of venue statute in future litigation, and the possibility of such a calculated venture is remote. BART has failed to show the existence of an *alter ego* arrangement.

More to the point, the sale of buses in Alameda County by this Ohio-based subsidiary in no way diminishes potential prejudice against Rohr. Such sales do not put Rohr in close association with the community and must be discounted.

■ Thus, the only contacts Rohr has with Alameda County outside of the BART contract work are the work of its product support supervisor in Oakland, the repair work on the naval station of another employee, and occasional purchases of goods and services in Alameda County. These activities fail to establish, either individually or cumulatively, that Rohr does business in Alameda County. The temporary

assignment of the supervisor to Alameda County, the site of Rohr's main ongoing transit project, does not establish an "Oakland office" for Rohr or constitute a close association with the Alameda County community. Temporary repair work by one technician is similarly not substantial enough to preclude the operation of the remedial change of venue statute. Even the purchases fail to establish a close association with the community. Most of the purchase orders were written in Chula Vista for goods to be shipped to San Diego County, a constant reminder to the sellers that Rohr is a San Diego corporation. The remainder of the purchases were made for use of employees temporarily assigned to Alameda County for the BART work. The conclusion is inescapable that Rohr is a San Diego County corporation the activities of which in Alameda County are not substantial enough for the company to be reasonably viewed as closely associated with the latter community. It follows that Rohr is not doing business in Alameda County for the purposes of section 394 and is entitled to a change of venue to a neutral county.

Rohr's right to a transfer is not diminished by the fact that one or more of the other corporate defendants may be doing business in the county. A resident defendant's "inability to invoke the statute should not destroy or impair the right which the statute gives [to nonresidents]." (*City of Oakland* v. *Darbee* (1951) 102 Cal.App.2d 493, 502 [227 P.2d 909] (nonresident landowners granted right to transfer in eminent domain proceedings, despite residency of other landowners).)

■ If Rohr is granted a change of venue, all of the other defendants must be granted relief under the authority of *Georgetown Divide Public Utility Dist.* v. *Bacchi* (1962) 204 Cal.App.2d 194 [22 Cal.Rptr. 27]. In that case, the district proceeded against several parcels of land, some owned by local residents, some owned by outsiders. The court granted the section 394 motion of the nonresidents to transfer and then declared, "considering the exact facts presented by the instant case, we hold that the change of venue should be granted to both the resident and nonresident groups of appellants, parties to this appeal. The law does not favor a multiplicity of lawsuits, and there is little sense in having multiple trials involving substantially the same expert testimony relative to a unitary block of land." (*Id.,* at p. 200.)

A similar result is compelled here. At issue below is the responsibility for alleged massive breakdowns in BART's services. The fault, if any, of Rohr, the supplier of transit vehicles, cannot be decided entirely

separately from the purported fault of Westinghouse, the supplier of automatic train control equipment, or Parsons, Brinckerhoff-Tudor-Bechtel, the joint consulting engineer. The litigation promises to be lengthy and complicated. We see no reason to add to the length and complexity by separating defendants on the basis of their residency. In order to avoid multiplicity of litigation, all the cases should be tried in the same neutral county.

## IV

The nature of the proceedings below compels us, however, to make an additional determination. At the time defendants' motion for change of venue was denied, the trial court granted a motion ordering a separate trial on certain causes of action relating to an accident occurring on BART's Fremont line (No. 467571-0). The only parties named as defendants in those causes of action were Westinghouse Electric Corporation, Parsons, Brinckerhoff-Tudor-Bechtel (PB-T-B), Parsons, Brinkerhoff, Quade & Douglas, and Bulova Watch Company, Inc. As our decision to transfer the major action (No. 457291-8) is based on the nonresidency of Rohr, which is not a defendant in the Fremont litigation, we must determine the status of the defendants in the latter case.

PB-T-B, an unincorporated association, is a joint engineering consulting venture formed to work on the BART project. Some of its constituent members have extensive contacts with Alameda County, including major government contracts, offices in Alameda County, and even membership in the Oakland Chamber of Commerce. PB-T-B does not deny that these activities constitute a close association with the community, but instead argues that the activities must be ignored in the determination whether PB-T-B itself is a resident of Alameda County.

Although no authority on the issue can be found in cases dealing with section 394, this court has declared, "an unincorporated association is not recognized as a jural entity for all procedural purposes. The general rule is that the entity theory is rejected except where specifically provided for by statute." (*Juneau etc. Corp.* v. *Intl. Longshoremen* (1951) 37 Cal.2d 760, 763 [235 P.2d 607].) In *Juneau,* a defendant unincorporated labor union sought a change of venue from Marin County, the home of some of its members, to San Francisco, its sole place of business. We held that the residency of the union's members must be considered for the purpose

of applying section 395, which fixes proper venue in the county in which the defendants, or some of them, reside at the time of the action.

A similar conclusion is called for in the present case. Although *Juneau* dealt with the propriety of original venue, there is no reason why a different result should be reached in a case concerning a removal statute such as section 394, which makes no specific provision for treating a joint venture separately from its members. The close association of PB-T-B's constituent members with the Alameda community mitigates the presumed bias in favor of BART. Thus, defendant PB-T-B does not have an independent right to a change of venue.

Defendant Westinghouse does not deny doing business in Alameda County, but seeks a change of venue by virtue of the asserted nonresidency of defendant Bulova. The problem is that Bulova has not moved for a transfer and in fact actively opposes it.

The language of section 394 appears to prevent Westinghouse from moving for a change of venue in the absence of a motion by a nonresident defendant. The statute provides in relevant part: "Whenever an action . . . is brought by a . . . local agency within a certain county . . . against a resident of another county . . . the action . . . must be, on motion of *either party,* transferred . . . ." On its face, the statute seems to grant a transfer right to the governmental plaintiff and the nonresident defendant, but makes no provision for an independent motion by a resident defendant.

Westinghouse bases its argument on *Georgetown Divide Public Utility Dist.* v. *Bacchi* (1962) *supra,* 204 Cal.App.2d 194. Syllogistically, the argument proceeds as follows: (1) the *Georgetown* case expressly granted to resident defendants the right to join nonresident defendants in moving to transfer an entire case under section 394; (2) if the nonresident defendants alone had moved for a change of venue, the entire cause of action would automatically have been removed in any event; (3) thus, for the *Georgetown* principle to have meaning, it must apply to a situation in which a resident defendant seeks a transfer on the basis of the nonresidency of another defendant who has *not* moved for a transfer.

The argument fails on its second premise. ■ When a nonresident defendant moves to transfer under section 394 in a case that also involves a resident defendant, contrary to Westinghouse's assertion the entire cause of action will not automatically be removed. The court has the

power to order a severance and a separate transfer solely for the nonresident defendant. (*City of Oakland* v. *Darbee* (1951) *supra,* 102 Cal.App.2d 493.) In *Georgetown,* the motion to remove was granted as to the resident defendants not automatically, but "considering the exact facts presented by the instant case." (204 Cal.App.2d at p. 200.) The *Georgetown* court, as noted previously, sought to avoid multiplicity of litigation, a factor that is not present in this case. Denying Westinghouse a change of venue will not create further litigation; the entire Fremont case will be tried in the same forum. ■■■ The conclusion is inescapable that section 394 may be invoked only when a nonresident party itself moves for a change of venue.

Defendant Parsons, Brinkerhoff, Quade & Douglas is a New York partnership which was an original member of the PB-T-B joint venture under a 1962 retainer agreement between the venture and BART. Under a 1964 amendment to that agreement, the partnership was succeeded with BART's consent by PBQ&D, Inc., a New Jersey corporation. As a price for obtaining BART's consent to the successorship of the corporation, the partnership agreed "to be responsible for all obligations and responsibilities heretofore assumed or performed by it under the Retainer Agreement, and all liabilities . . . of PBQ&D, Inc." The partnership is thus responsible for the acts of its successor and for its own acts between 1962 and 1964.

No claim is made that the partnership does business in Alameda County under its own name. On two grounds, nevertheless, BART maintains that the partnership has no independent right to a change of venue. First, BART asserts that the partnership is a mere surety for the successor corporation because the liabilities of the two are coextensive, and the partnership therefore has no right to a transfer independent of the right of the successor corporation. This argument misinterprets the amendment to the retainer agreement, which clearly specifies that the partnership is independently liable for acts occurring before the successor corporation was formed. The successor corporation, on the other hand, is not liable for acts performed by the partnership before 1964.

BART also contends that the partnership is a "shell entity" because the personnel and operations of the partnership and the successor corporation overlap to such an extent that the two cannot be considered separately. As no authority for a "shell entity" theory can be found, this argument appears to be another variation of an "alter ego" rationale. But as we noted in our discussion of Rohr's subsidiary. Flxible Co. (*ante,*

pp. 273-274), separate corporate or partnership existence will not be disregarded except in instances of bad faith. A showing of bad faith under the present circumstances would require proof that the partnership signed the successor agreement in anticipation of preserving its right to change venue in litigation 10 years hence. As no such claim has been or can be made, the partnership has an independent right to a change of venue.

Since the partnership has a right to such a transfer, the interest in protecting against multiplicity of litigation (*ante,* pp. 275-276) dictates that the other defendants in the Fremont accident litigation also be granted a change of venue.

Let writs of mandate issue directing respondent court to order a change of venue to a neutral county in action No. 457291-8 and action No. 467571-0.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

Petitions for a rehearing were denied June 24 and July 21, 1976.