[No. A061750. First Dist., Div. Two. Apr. 22, 1994.]

CURRENT, INC., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

384

**Counsel**

Daniel E. Lungren, Attorney General, and Jack Newman, Deputy Attorney General, for Defendant and Appellant.

Morrison & Foerster, Prentiss Willson, Jr., Charles J. Moll III, Susan St. Amour, Dorsey & Whitney, John W. Windhorst, Jr., and William R. Goetz for Plaintiff and Respondent.

## Opinion

HODGE, J.*—*In Nat. Bellas Hess* v. *Dept. of Revenue* (1967) 386 U.S. 753 [18 L.Ed.2d 505, 87 S.Ct. 1389] (*Bellas Hess*), and again in *Quill Corp.* v. *North Dakota By and Through Heitkamp* (1992) 504 U.S. __ [119 L.Ed.2d 91, 112 S.Ct. 1904] (*Quill*), the United States Supreme Court determined that the commerce clause of the United States Constitution precludes imposition of a use tax upon an out-of-state mail-order firm whose only connection with customers of the taxing state was by common carrier or United States mail.

Respondent Current, Inc. (Current) is an out-of-state mail-order company whose business activities were, until December 31, 1987, clearly within the protection of *Bellas Hess* and *Quill*. On December 31, 1987, Current was acquired by Deluxe Corporation, which has considerable commercial contacts within California. Appellant, the taxing authority for the State of California, then imposed a use tax upon Current, relying on Revenue and Taxation Code section 6203, subdivision (g)[1], which imposes a collection responsibility upon "[a]ny retailer owned or controlled by the same interests which own or control any retailer engaged in business in the same or similar line of business in this state."

Appellant challenges the trial court's findings that section 6203, subdivision (g) is unconstitutional as applied to Current, and that Current does not fall within the statute's purview.

### Statement of Facts

The facts bearing upon respondent's relationship with California were stipulated to by the parties:

Respondent, Current, is a corporation duly organized and existing under the laws of Delaware. Current's principal place of business is in Colorado Springs, Colorado.

Appellant, State Board of Equalization (SBE), is and was at all relevant times an agency of the State of California organized and existing under article XIII, section 17 of the California Constitution, having powers and duties prescribed by the laws of the state.

---

*Judge of the Alameda Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]All further statutory references are to the Revenue and Taxation Code unless otherwise specified.

During the taxable period, January 1, 1988, through March 31, 1988, Current conducted a mail-order business with all of its facilities and employees located in Colorado. Current had no employees, inventories or facilities in California, and had no other contacts with California except as specifically set forth herein. Current mailed catalogues six times annually from Colorado to residences throughout the United States. The recipients of the catalogues were either previous customers or prospective customers whose names were obtained from other mail-order businesses. In addition, Current solicited orders through brochures inserted with the products of other interstate mail-order companies and through newspaper and magazine advertisements. The brochures and advertisements were arranged directly with the magazine or through brokers, and no attempt was made to target such solicitations into California. Over 90 percent of Current's sales were to individuals who had previously purchased from Current.

Current is engaged in the concept development, artwork design, production, and retail sale through the mail of greeting cards, gift-wrapping paper and spin-off novelty items, including novelty checks incorporating scenes from successful greeting card promotions. Most of Current's sales consisted of greeting cards and gift-wrapping paper. During the taxable period, approximately 31.6 percent of Current's salaried employees were engaged in the artistic design of its products. Current's success depended upon the ability of its employees to create designs and greeting card expressions that appeal to individual customers.

During the taxable period, 7.9 percent of Current's revenue arose from its sale of checks. Current had begun the production and sale of checks in 1986 as a spin-off from its traditional stationery products. Approximately 97 percent of Current's revenue was derived during the taxable period from the sale of its products at retail to individuals. The remaining 3 percent was derived from the sale of its products to churches and other fund-raising groups for resale.

Product orders were accepted by Current through the mail at Current's place of business in Colorado. These orders were filled by shipment from Colorado either through the mail or by common carrier. Current accepted payment by check, money order, or major credit card. Payment for 89 percent of Current's sales was made by check or money order accompanying the customer's order and payment for 1 percent was made by credit card charge when the order was placed. The remaining 10 percent of the sales were on open account, the terms of which required payment of at least 50 percent of the price when the order was placed if the price exceeded $200 and full payment following delivery. Current has never conducted debt

collection activities in California, either directly or through a collection agency or other independent contractor. It has never used the services of any California credit reference agency. Current did not collect California use tax from it customers.

Current is a wholly owned subsidiary of Deluxe Corporation (Deluxe). Deluxe acquired the stock of Current on December 31, 1987. Prior to that date, Current was wholly unrelated to Deluxe, but was actively engaged in the same business as that in which it was engaged during the taxable period.

Deluxe is organized under the laws of the State of Minnesota, and maintains its principal place of business in St. Paul, Minnesota. During the taxable period, Deluxe maintained 6 manufacturing plants, 35 field sales representatives, and 16 additional supervisory and sales service personnel in California, and held a seller's permit in California.

Deluxe is engaged primarily in the manufacture and sale of checks at wholesale. Fewer than 1 percent of Deluxe's employees were engaged in the artistic design of its products. During the taxable period, 96.3 percent of the sales of Deluxe to California customers were sales of checks to financial institutions and their depositors. Deluxe billed the financial institutions for the checks, and received payment for them from the financial institutions, either weekly or monthly, following the shipment of checks to the financial institutions or their depositors. The noncheck sales to California customers during the taxable period, representing 3.7 percent of the sale of Deluxe to California customers, involved sales of financial forms to banks for their own use and mail-order sales of business forms, preinked hand stamps and checkbook calculators. The mail-order sales by Deluxe of all products (checks and nonchecks) to California customers during the taxable period represented approximately 4 percent of its total sales to California customers.

The Deluxe sales representatives personally called upon, and promoted the sale of Deluxe products in 1,292 banks and other financial institutions (embracing 8,754 branch offices) in California. The marketing efforts of Deluxe involved developing personal relationships between its sales representatives and the financial institutions. Deluxe also published catalogues for the use of its sales representatives in promoting the sale of its checks and as ordering aids.

Approximately 60 percent of the 1988 sales of Deluxe checks to or through California financial institutions resulted from contracts with those institutions, made before January 1, 1988, under which the institutions

agreed to offer their customers only Deluxe checks. The remaining 40 percent of such sales involved financial institutions that placed orders from time to time but had not committed any particular volume of orders to Deluxe.

Neither Current nor Deluxe was the alter ego or agent of the other for any purpose. Neither solicited orders for the products of the other, and neither accepted returns of the merchandise of the other or otherwise assisted or provided services for customers of the other. Each owned, operated and maintained its own business assets, conducted its own business transactions, hired and paid its own employees, and maintained its own accounts and records. Current and Deluxe did not have integrated operations or management.

Current and Deluxe were organized and operated as separate and distinct corporate entities. Neither held itself out to customers or potential customers as being the same as, or an affiliate of, the other. Each had its own trade name, goodwill, marketing practices and customer lists and each marketed its products independently of the other. Neither exploited the trade name, corporate identification or goodwill of the other or purchased goods or services from the other.

Following an informal hearing with the SBE hearing officer, the SBE determined that Current is liable for California use tax under section 6203, subdivisions (f) and (g).

The SBE now acknowledges that Current was not required to collect or remit use tax during the taxable period under section 6203 subdivision, (f) in view of the United States Supreme Court's decision in *Quill, supra,* 504 U.S. ___ [119 L.Ed.2d 91, 112 S.Ct. 1904].

Current was not required to collect or remit use tax on sales made prior to January 1, 1988, the effective date of section 6203, subdivision (g). During the taxable period, Current was not required to collect and remit use tax unless section 6203, subdivision (g) applied to Current and unless section 6203, subdivision (g), on its face and as applied to Current, is valid.

On August 14, 1990, the SBE issued to Current a notice of redetermination reflecting use tax liability in the amount of $259,200 with respect to mail-order sales to California customers during the taxable period.

On or about August 31, 1990, Current paid this proposed use tax liability, plus $84,887.69 of interest thereon, for a total amount of $344,087.69. On

February 12, 1991, Current timely filed a claim for refund for use tax and interest paid in the amount of $344,087.69 for the taxable period. On August 7, 1991, the SBE mailed Current a notice denying Current's claim for refund. Current has exhausted all administrative remedies available to it.

## DISCUSSION

The issue, as artfully stated by the trial judge, "is whether by virtue of California Revenue & Tax[ation] Code section 6203(g) [Current] is one toe over the bright-line created by *National Bellas Hess, Inc.* v. *Department of Revenue of Ill.*, [*supra*] 386 U.S. 753 . . . ."

In *Bellas Hess, supra*, the United States Supreme Court ruled that the commerce and due process clauses of the United States Constitution prohibited a state from imposing the duty of use tax collection and payment upon a seller whose only connection with customers in the state is by common carrier or mail. The court drew a precise distinction between mail-order sellers with retail outlets, solicitors, or property within a state, and those who do no more than communicate with customers in the state by mail or common carrier. (386 U.S. at p. 758 [18 L.Ed.2d at pp. 509-510].)

The Supreme Court revisited *Bellas Hess* in *Quill, supra*, 504 U.S. ___ [119 L.Ed.2d 91, 112 S.Ct. 1904]. In *Quill*, the court held that (1) mail-order businesses did not need to have a physical presence in the state in order to permit the state, consistent with the due process clause, to require them to collect use tax from their in-state customers, but (2) physical presence in the state was required for a business to have a "substantial nexus" with the taxing state, as required by the commerce clause. The court affirmed that in order to survive a commerce clause challenge, a tax must satisfy the four-part test articulated in *Complete Auto Transit, Inc.* v. *Brady* (1977) 430 U.S. 274 [51 L.Ed.2d 326, 97 S.Ct. 1076]. *Complete Auto* requires that the tax: "[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." (*Id.*, at p. 279 [51 L.Ed.2d at p. 331].) The only prong at issue here is the first— whether there existed a substantial nexus between Current and the State of California.

The *Quill* court reaffirmed the bright-line analysis of *Bellas Hess*: "In *National Geographic Society* v. *California Bd. of Equalization*, 430 U.S. 551, 559 [51 L.Ed.2d 631, 639, 97 S.Ct. 1386, 1392] (1977), we affirmed the continuing vitality of *Bellas Hess*'s 'sharp distinction . . . between mail-order sellers with [a physical presence in the taxing] State and those . . . who do no more than communicate with customers in the State by mail or

common carrier as part of a general interstate business.' We have continued to cite *Bellas Hess* with approval ever since." (*Quill, supra,* 504 U.S. at page __ [119 L.Ed.2d at p. 106, 112 S.Ct. at p. 1912].) Thus, mail-order sellers with no retail outlets, solicitors, or property within the state may not be taxed. It is clear that prior to Current's acquisition by Deluxe, it was well within "the demarcation of a discrete realm of commercial activity that is free from interstate taxation." (*Id.,* at p. __ [119 L.Ed.2d at p. 108, 112 S.Ct. at p. 1914].)

■ The only substantial issue posed is whether the acquisition of Current by Deluxe acted to create a sufficient nexus with California to justify the application of section 6203, subdivision (g) consistent with the requirements of the commerce clause.

In *Quill,* the Supreme Court noted that the nexus requirements imposed by the due process and commerce clauses are not equivalent. Thus, the body of law interpreting the "minimum contacts" required to give notice and fair warning is not applicable to a substantial nexus analysis. The commerce clause is not concerned so much with fairness to the individual, as with "concerns about the effects of state regulation on the national economy." (*Quill, supra,* 504 U.S. at p. __ [119 L.Ed.2d at p. 106, 112 S.Ct. at p. 1913].) The substantial nexus requirement is "a means for limiting state burdens on interstate commerce." (*Ibid.*)

While this is a case of first impression in California, other states have considered similar factual circumstances. In *Bloomingdale's* v. *Dept. of Revenue* (1991) 527 Pa. 347 [591 A.2d 1047] (*Bloomingdale's*), *affirming* 130 Pa. Commw. 190 [567 A.2d 773], certiorari denied __ U.S. __ [119 L.Ed.2d 223, 112 S.Ct. 2299], the court found that a sufficient nexus was not established between an out-of-state mail-order company, "Bloomingdale's By Mail," with no physical presence in the state and its parent company which owned retail stores within the taxing state. The court found the issue to turn on whether the parent company acted as an agent for the mail-order company.

The court in *Reader's Digest Association* v. *Mahin* (1970) 44 Ill.2d 354 [255 N.E.2d 458] (*Reader's Digest*), certiorari denied 399 U.S. 919 [26 L.Ed.2d 786, 90 S.Ct. 2237], also found the agency relationship critical to the nexus analysis in a case involving affiliated entities. Hence, a sufficient nexus was established because the mail-order's subsidiary which was present in the state also acted as its agent in the solicitation of advertising. (255 N.E.2d at p. 458.)

Finally, in *SFA Folio Collections, Inc.* v. *Bannon* (1991) 217 Conn. 220 [585 A.2d 666] (*SFA Folio*), certiorari denied 501 U.S. 1223 [115 L.Ed.2d

1008, 111 S.Ct. 2839], Saks & Company, a New York corporation, owned both Folio, a New York corporation whose mail-order business sold to Connecticut customers, and Saks-Stamford, a separate corporation operating a retail store in Stamford, Connecticut. Folio catalogues were used as "reference guides" and "educational tools" by the Saks-Stamford stores; Folio customers could use the Saks-Stamford tailoring services; and Folio customers could use their Saks credit cards.

The Connecticut Supreme Court relied upon *Bellas Hess* to find that despite the overlapping services, Folio's mail-order activities did not warrant the imposition of a use tax. The court rejected the argument of the revenue commissioner that ". . . because these separate entities are linked by their common corporate parent, Saks & Company, their separate corporate existence should be disregarded and they should be treated as one enterprise for the purposes of establishing a nexus for taxation." (*SFA Folio, supra,* 585 A.2d at p. 672, fn. omitted.) The court relied upon the fundamental principle of corporate law that the parent corporation and its subsidiary are to be treated as separate and distinct legal persons in the absence of a showing that corporate assets have been intermingled, that the formalities of separate corporate procedure have been ignored, or where the corporation is inadequately financed.[2]

We find the *Bloomingdale's, Reader's Digest* and *SFA Folio* decisions persuasive on the issue presented. As stipulated by the parties, Current and Deluxe "did not have integrated operations or management," "were organized and operated as separate and distinct corporate entities," and, "neither . . . was the alter ego or agent of the other for any purpose." Thus, we find Current's physical nexus with the State of California insufficient to justify the imposition of a use tax. As applied to Current, section 6203, subdivision (g) is unconstitutional as violative of the commerce clause.

As an alternative basis for affirmance, we address whether Current comes within the purview of section 6203, subdivision (g). Subdivision (g) applies only to "retailer[s] owned or controlled by the same interests which own or control any retailer *engaged in business in the same or similar line of business* in this state." (Italics added.) The SBE hearing officer found Current and Deluxe to be in the same or similar business, stating that both "are engaged in the printing business." The trial court found the SBE's interpretation of the statute's scope "too broad." We agree.

---

[2]See also *Westinghouse Electric Corp.* v. *Superior Court* (1976) 17 Cal.3d 259, 274 [131 Cal.Rptr. 231, 551 P.2d 847] (a parent corporation and its subsidiaries are separate and distinct legal persons), and, *Luis* v. *Orcutt Town Water Co.* (1962) 204 Cal.App.2d 433, 443-444 [22 Cal.Rptr. 389] (corporate entity of a wholly owned subsidiary will be disregarded only when recognition of the separate entities of parent and subsidiary would produce fraud or injustice).

The fact that a company's products are reproduced by printing is too common a denominator to constitute a meaningful standard.[3] It is the uniqueness of the product itself, coupled with any distinctive marketing strategy, which must pass the test of similarity under section 6203, subdivision (g).

It is undisputed that Current is a mail-order company that solicits the business of individuals and fund-raising groups only. Deluxe, on the other hand, sells its goods to and through financial institutions. The customer bases are therefore entirely different. Also distinctive is the manner in which each markets its products. Current mails its catalogues to individual consumers. Deluxe depends entirely on the personal relationships developed between its sales representatives and financial institution employees.

Finally, the product lines are dissimilar. Current sells greeting cards, gift wrap and various other novelty items, including checks. An emphasis is placed on the creative design of Current's products. To that end, approximately 31.6 percent of Current's employees were engaged in the artistic design of its products. Deluxe sells checks which the institutions offer to their depositors, and financial forms for their in-house use. Fewer than 1 percent of Deluxe's employees were engaged in the artistic design of its products.

Although Current and Deluxe both produce checks, only 7.9 percent of Current's revenue is derived from those sales, whereas 96.3 percent of Deluxe's business came from the sale of checks. We do not find this overlap sufficient to render the two corporations in "the same or similar line of business." We conclude that the development, design, production and marketing of Current's various novelty products were substantially dissimilar from that of Deluxe and afford no basis for application of section 6203, subdivision (g).

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Kline, P. J., and Phelan, J., concurred.

---

[3]We note that Current also sold various products which were not printed, including rings and "talking toast."